# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RAUL HERNANDEZ,

       Plaintiff,

vs.                                                                                    No. CIV 17-1083 JB/GBW

CHEVRON U.S.A., Inc.;
AIRSWIFT HOLDINGS
LIMITED and GRAND ISLE
SHIPYARD, INC.,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER[1]</u>

**THIS MATTER** comes before the Court on: (i) Defendant Airswift Holdings Limited's Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support, filed November 8, 2017 (Doc. 7)("Motion"); (ii) the Plaintiffs' Motion to Stay Ruling Pending Jurisdictional Discovery on Defendant Airswift Holdings Limited's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 7), filed November 22, 2017 (Doc. 15)("Motion to Stay"); (iii) Plaintiffs' Motion to Remand, filed November 30, 2017 (Doc. 17)("Motion to Remand"); and

---

[1] The Court previously issued an Order, filed August 18, 2018 (Doc. 43)("First Order") that granted in part the requests in Plaintiff's Opposed Motion for Leave to File First Amended Complaint to Add Swift Technical Services, L.L.C. as an Additional Party, and to Remand Pursuant to 28 U.S.C. § 1447(e), filed November 30, 2017 (Doc. 18). <u>See</u> First Order at 2. The Court also issued an Order, filed August 18, 2018 (Doc. 44)("Second Order") that: (i) granted the requests in Defendant Airswift Holdings Limited's Motion to Dismiss for Lack of Personal Jurisdiction and Brief in Support, filed November 8, 2017 (Doc. 7); and (ii) denied Plaintiffs' Motion to Stay Ruling Pending Jurisdictional Discovery on Defendant Airswift Holdings Limited's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 7), filed November 22, 2017 (Doc. 15). <u>See</u> Second Order at 3. In the First Order and Second Order, the Court indicated that it would issue a Memorandum Opinion more fully detailing the rationale for those orders, and, in the First Order, it indicated that it would issue a Memorandum Opinion and Order deciding an issue it had reserved to resolve later. <u>See</u> First Order at 1 n.1; Second Order at 1 n.1. This Memorandum Opinion and Order is both the promised Memorandum Opinion and the promised Memorandum Opinion and Order.

(iv) Plaintiff's Opposed Motion for Leave to File First Amended Complaint to Add Swift Technical Services, L.L.C. as an Additional Party, and to Remand Pursuant to 28 U.S.C. § 1447(e), filed November 30, 2017 (Doc. 18)("Motion to Amend"). The Court held a hearing on August 13, 2018. The primary issues are: (i) whether Defendant Airswift Holdings Limited has minimum contacts with New Mexico; (ii) whether Hernandez is diverse from Defendants Chevron U.S.A., Inc. and Grand Isle Shipyard, Inc.; and (iii) whether the Court should allow Hernandez to amend Plaintiff's Original Complaint for Personal Injuries, (First Judicial District Court, County of Santa Fe, State of New Mexico), filed September 6, 2017, filed in federal court on November 1, 2017 (Doc. 1-6)("Complaint") to add Swift Technical Services, L.L.C. as a defendant, which would destroy complete diversity if it previously existed. The Court concludes that (i) Airswift Holdings lacks minimum contacts with New Mexico; (ii) all plaintiffs were diverse from all defendants at the time of removal; and (iii) Hernandez may amend his complaint to add Swift Technical. Accordingly, the Court grants the Motion, denies the Motion to Stay, denies the Motion to Remand, and grants the Motion to Amend. Because the Court has permitted joinder of a non-diverse Defendant, the Court's jurisdiction has been destroyed, so it will remand the case to the First Judicial District Court, County of Santa Fe, State of New Mexico. See 28 U.S.C. § 1447(e).

## FACTUAL BACKGROUND

The Court takes its facts from the Complaint. The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that the facts are largely Hernandez' version of events.

Hernandez is a contract laborer working under Chevron U.S.A. and its agent's -- Airswift Holdings -- employ. See Complaint ¶ 7, at 2. On December 3, 2015, Hernandez was

working on a Chevron, U.S.A. plant located near Lovington, New Mexico.  See Complaint ¶¶ 6-7, at 2.  On that day, Chevron U.S.A. and Airswift Holdings ordered Hernandez to clean an unlit, "completely dark" tank vessel that was filled with "sludge" and "unsafe levels of chemical and toxic vapors."  Complaint ¶¶ 7, 9, at 2-3.  As a result of the tank vessel's conditions, Hernandez slipped and fell, sustaining "serious bodily injuries."  Complaint ¶ 21, at 4.

## PROCEDURAL BACKGROUND

Hernandez sues Chevron U.S.A. and Airswift Holdings for negligence, asserting that they breached their duty of care in at least twenty-five different ways, including: (i) failing to provide proper safety equipment; (ii) failing to install adequate lighting inside the tank; (iii) failing to warn Hernandez of dangers; (iv) failing to establish and enforce safety rules and regulations; (v) failing to inspect; and (vi) failing to adequately train, educate, or provide instructions to its employees.  See Complaint ¶ 30, at 5-6.  Hernandez also sues Grand Isle, should it be determined that Hernandez was an employee of Grand Isle, for Willful Conduct and Gross Negligence, asserting that the risk of danger to Hernandez "was extremely great," because of the "confined work space[]" in which he worked.  Complaint ¶ 40, at 9.  See id. ¶ 41, at 9.  Hernandez requests compensatory and punitive damages, fees, recoverable court costs, and pre- and post-judgment interest.  See Complaint ¶ 46, at 11

Airswift Holdings removes the case on the basis of diversity jurisdiction.  See Notice of Removal ¶ 8, at 3, filed November 1, 2017 (Doc. 1)("Notice of Removal").[2]  Airswift Holdings contends that there is diversity jurisdiction, because: (i) citizenship is diverse -- Hernandez is a Texas citizen, whereas Airswift Holdings, Chevron U.S.A., and Grand Isle are, respectively,

---

[2]Although filing the Notice of Removal, Airswift Holdings denies that the Court has personal jurisdiction over it and reserves its right to seek dismissal of the case against it on that ground.  See Notice of Removal at 1 n.1.

United Kingdom, Pennsylvania, and Louisiana citizens; and (ii) the compensatory and punitive damages, and fees requested exceed $75,000.00.  See Notice of Removal ¶¶ 8-14, at 3-4. Chevron U.S.A. and Grand Isle consent to removal.  See Notice of Consent to Notice of Removal at 1, filed November 1, 2017 (Doc. 2); Defendant Grand Isle Shipyard, Inc.'s Consent to Removal to Federal Court at 1, filed November 1, 2017 (Doc. 3).

### 1.    The Motion.

Airswift Holdings moves to dismiss for lack of personal jurisdiction.  See Motion at 1. Airswift Holdings argues that there is no general personal jurisdiction, because "Airswift is not incorporated in New Mexico, does not do business in New Mexico, does not own property in New Mexico, does not pay taxes in New Mexico, and does not have a bank account in New Mexico."  Motion at 4-5.  Airswift Holdings argues that it is not subject to specific personal jurisdiction, because it lacks minimum contacts with New Mexico.  See Motion at 5.  According to Airswift Holdings, "the only basis for specific jurisdiction articulated by Plaintiff is that, on information and belief, Airswift provided services or materials at Chevron's Buckeye CO2 Plant near Lovington, New Mexico."  Motion at 5.  Airswift Holdings contends that such an allegation is "not supported by any facts."  Motion at 5.  Specifically, it argues that specific personal jurisdiction is lacking, because Airswift Holdings: (i) does not employ Hernandez; (ii) does not provide any services or materials to Chevron's Buckeye CO2 plant; and (iii) has no contractual relationship with Chevron U.S.A. or Grand Isle.  See Motion at 5 (citing Declaration of Peter Searle ¶¶ 4-5, at 1-2 (executed November 7, 2017), filed November 8, 2017 (Doc. 7-1)("Searle Decl.")).  Finally, Airswift Holdings argues that none of its employees were working at that plant in 2015 or 2016.  See Motion at 5 (citing Searle Decl. ¶ 6, at 2).  Accordingly, Airswift Holdings

requests that Court dismiss Hernandez' claims against it for lack of personal jurisdiction.  <u>See</u> Motion at 6.

###     2.      <u>Motion to Stay</u>.

Hernandez moves the Court to stay its ruling on the Motion pending jurisdictional discovery.  <u>See</u> Motion to Stay at 1.  He argues that the stay is appropriate so that Hernandez can uncover Airswift Holdings' relationship with its related entity, Swift Technical, a Texas L.L.C., which, according to Hernandez, had employees or agents at the Lovington plant who were involved in negligent conduct that gives rise to Hernandez' injuries.  <u>See</u> Motion to Stay at 1, 5 (citing Notice of Denial of Compensability/Liability and Refusal to Pay Benefits at 1 (dated November 8, 2017), filed November 22, 2017 (Doc. 15)("Denial Notice")).  Hernandez asserts that a stay to conduct jurisdictional discovery is appropriate "when the existing record is inadequate," but a "plaintiff's jurisdictional allegations may be supported through discovery." Motion to Stay at 5 (citing <u>Trintec Indus. v. Pedre Promotional Prods.</u>, 395 F.3d 1275, 1283 (Fed. Cir. 2005)).  Hernandez asserts that discovery will show that Airswift Holdings is a "multi-billion dollar corporation" that has injected its products into New Mexico.  Motion to Stay at 8. According to Hernandez, such a showing will demonstrate that personal jurisdiction is proper. <u>See</u> Motion to Stay at 8.

###     3.      <u>Motion to Remand</u>.

Hernandez moves to remand to state court for lack of subject-matter jurisdiction.  <u>See</u> Motion to Remand at 1.  He contends that Airswift Holdings does not carry its removal burden, because it does not present any evidence to contest the Complaint's allegations that Grand Isle's principal place of business is in Odessa, Texas, and that Airswift Holdings' principal place of business is Houston, Texas.  <u>See</u> Motion to Remand at 7 ("It simply alleges, without any

evidence, that Plaintiff is mistaken."). Hernandez concludes that, because Airswift Holdings did not present sufficient evidence to rebut the Complaint's allegations, remand to state court is required. See Motion to Remand at 8.

Hernandez also argues that removal is untimely. See Motion to Remand at 9. He argues that, because removal was more than thirty days after Chevron U.S.A. and Grand Isle received the Complaint, the Court should remand the case. See Motion to Remand at 9. Hernandez argues that the evidence does not support Airswift Holdings' argument to the contrary, that Airswift Holdings did not receive the Complaint until October 2, 2017, as the state court record shows that the Complaint was served on Airswift Holdings on September 11, 2017. See Motion to Remand at 9-10. Accordingly, Hernandez asks the Court to remand the case. See Motion to Remand at 11.

4.      **Motion to Amend.**

Hernandez moves to amend the Complaint to add Swift Technical Services, L.L.C. as a defendant. See Motion to Amend at 1. He argues that, should the Court grant the amendment, remand to state court would be proper, because Swift Technical is a Texas citizen, thus destroying complete diversity. See Motion to Amend at 4-5. Hernandez asserts that Swift Technical's joinder "is necessary to resolve the underlying issues of liability in this suit," and that, should the Court deny joinder, Hernandez would have to sue Swift Technical separately in state court, wasting judicial resources. See Motion to Amend at 5-6 ("This would then create parallel proceedings and a race to judgment and res judicata between the Plaintiff's present suit against Defendants . . . and the Plaintiff's state court suit against Swift Technical."). Hernandez asserts that allowing an amendment is proper, because he may have "inadvertently" brought his claim against Airswift Holdings, "a related entity," rather than Swift Technical, the actual entity

"whose negligent conduct proximately caused Plaintiff's injuries and damages." Motion to Amend at 6-7. Thus, he asks the Court to allow an amendment adding Swift Technical as a defendant. See Motion to Amend at 7.

>        5.        **Response to Motion to Stay.**

Airswift Holdings responds to the Motion to Stay. See Defendant Airswift Holdings Limited's Response to Plaintiff's Motion to Stay Ruling Pending Jurisdictional Discovery on Airswift's Motion to Dismiss for Lack of Personal Jurisdiction at 1, filed December 6, 2017 (Doc. 20)("Motion to Stay Response"). Airswift Holdings argues that the Court should deny the Motion to Stay, because Hernandez has not made "a colorable or prima facie showing of personal jurisdiction." Motion to Stay Response at 3 (citing Cent. States Se. & Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 (7th Cir. 2000)). Airswift Holdings contends that a proper way for Hernandez to meet that prima facie showing is to present evidence, "such as affidavits," but Hernandez has made no such showing. Motion to Stay Response at 3-4 ("[T]he Court may not take the plaintiff's allegations in the complaint as true if the defendant's proffered evidence to controvert them."). According to Airswift Holdings, the only evidence that Hernandez has presented -- the Denial Notice -- is inadmissible hearsay and is not authenticated. See Motion to Stay Response at 4 n.1. It adds that, even if the Court can properly consider the Denial Notice, it lacks "any information that would establish that Airswift had . . . minimum contacts with the state of New Mexico." Motion to Stay Response at 4.

Airswift Holdings also argues that the Court should deny the Motion to Stay, because jurisdictional discovery will not establish personal jurisdiction. See Motion to Stay Response at 5-6. According to Hernandez, jurisdictional discovery will demonstrate that Airswift Holdings is

connected to Swift Technical, but Airswift Holdings argues that, even if Swift Technical is a subsidiary or affiliate of Airswift Holdings, that connection will not establish personal jurisdiction over Airswift Holdings. See Motion to Stay Response at 6. Finally, Airswift Holdings contends that the Court should deny jurisdictional discovery, because Hernandez' request is just a fishing expedition, as Hernandez' complete lack of discovery requests demonstrate. See Motion to Stay Response at 6-7.

6.    **Chevron U.S.A.'s Response to the Motion.**

Chevron U.S.A. responds to the Motion. See Defendant Chevron U.S.A. Inc.'s Response to Answer to Defendant Airswift Holdings Limited's Motion to Dismiss for Lack of Personal Jurisdiction at 1, filed December 11, 2017 (Doc. 21)("Chevron U.S.A. Response."). Chevron U.S.A. responds that it does not oppose the Motion, unless Airswift Holding's dismissal would "negatively impact Airswift's contractual and common law indemnification obligations to Chevron." Chevron U.S.A. Response at 1. Chevron U.S.A. concludes that, if the Court "determines that Airswift's dismissal would somehow prejudice Chevron's indemnification rights, then Chevron opposes Airswift's Motion to Dismiss for Lack of Personal Jurisdiction." Chevron U.S.A. Response at 1.

7.    **Grand Isle's Response to Motion to Remand.**

Grand Isle responds to the Motion to Remand. See Defendant Grand Isle Shipyard, Inc.'s Response in Opposition to Plaintiff's Motion to Remand and for Leave to File Amended Complaint at 1, filed December 14, 2017 (Doc. 22)("Grand Isle's Response to Motion to Remand"). It argues that the Court should deny the Motion to Remand, because Airswift Holdings timely filed its Notice of Removal, there is complete diversity, and there is no dispute that the claim exceeds $75,000.00. See Grand Isle's Response to Motion to Remand at 1-2.

**8.      Airswift Holdings' Response to Motion to Remand.**

Airswift Holding responds to the Motion to Remand. See Defendant Airswift Holdings Limited's Response to Plaintiff's Motion to Remand at 1, filed December 14, 2017 (Doc. 23)("Airswift Holdings' Response to Motion to Remand"). Airswift Holdings argues that, contrary to Hernandez' assertions, its Notice of Removal is proper, because it timely filed the Notice of Removal, and because Airswift Holdings is not required to attach evidence to the Notice of Removal. See Airswift Holdings' Response to Motion to Remand at 3-5 (citing McPhail v. Deere & Co., 529 F.3d 947, 953 (10th Cir. 2008); Thompson v. Intel Corp., 2012 WL 380748, at *2, 13-14 (D.N.M. Aug. 27, 2012)(Browning, J.)). It argues that the evidence shows that Airswift Holdings did not receive the Complaint until October 2, 2017, so their November 1, 2017, Notice of Removal filing is timely. See Airswift Holdings' Response to Motion to Remand at 5 (citing Declaration of Jill Green ¶ 2, at 1 (executed December 12, 2017), filed December 14, 2017 (Doc. 23-1)("Green Decl.")). It argues that, contrary to Hernandez' position, the thirty-day removal period does not start when the New Mexico Secretary of State receives a copy of the summons, but instead starts on the date when the Secretary of State mails a copy of the summons to the defendant. See Airswift Holdings' Response to Motion to Remand at 5. Airswift Holding adds that, under 28 U.S.C. § 1446(b)(3), its removal deadline was sometime in mid-November, 2017, because the Complaint alleges that Grand Isle's principal place of business is Texas, so Airswift Holding was unable to determine that the Complaint was removable until October 17, 2017, when it received an email from Grand Isle that its principal place of business is, in fact, in Louisiana. See Airswift Holdings' Response to Motion to Remand at 6. Finally, Airswift Holdings argues that the evidence it presents demonstrates complete diversity. See Airswift Holdings' Response to Motion to Remand at 7-8 (citing Searle

Decl. ¶¶ 2-3, at 1; Declaration of Eric Callais ¶¶ 2-3, at 1 (executed December 12, 2017), filed December 14, 2017 (Doc. 23-4)("Callais Decl.").

### 9. <u>Airswift Holdings' Response to Motion to Amend.</u>

Airswift Holdings responds to the Motion to Amend. <u>See</u> Defendant Airswift Holdings Limited's Response to Plaintiff's Opposed Motion for Leave to File First Amended Complaint at 1, filed December 14, 2017 (Doc. 24)("Airswift Holdings' Response to Motion to Amend"). Airswift Holdings argues that the Court should deny the Motion to Amend, "because it is filed solely for the purpose of destroying diversity jurisdiction." Airswift Holdings' Response to Motion to Amend at 2. According to Airswift Holdings, Hernandez' motive is apparent, because he "was aware of" Swift Technical "at all times relevant," but chose to amend his Complaint only now that Airswift Holdings has established that diversity citizenship exists between all of the other parties. Airswift Holdings' Response to Motion to Amend at 2. Airswift Holdings also argues that Swift Technical is not a necessary party, so joinder is not required under rule 19 of the Federal Rules of Civil Procedure. <u>See</u> Airswift Holdings' Response to Motion to Amend at 4. According to Airswift Holdings, Swift Technical is not a necessary party, because Hernandez could obtain complete relief from the other Defendants in this case. <u>See</u> Airswift Holdings' Response to Motion to Amend at 4. <u>See</u> <u>id.</u> at 5 ("[J]oint-tortfeasors and indemnitors/contributors are not necessary/required parties."). Airswift Holdings contends, moreover, that Swift Technical is not a necessary party, because Swift Technical would not be subject to inconsistent obligations if it is not made a party, <u>i.e.</u>, Swift Technical would not be subject to conflicting state and federal court orders. <u>See</u> Airswift Holdings' Response to Motion to Amend at 5.

Airswift Holdings contends that, because Swift Technical is not a necessary party, the Court has discretion to deny joinder. See Airswift Holdings' Response to Motion to Amend at 6-7. It asserts that Hernandez' failure to join Swift Technical when he knew about Swift Technical's involvement before removal outweighs any prejudice that Hernandez would suffer from the Court denying joinder. See Airswift Holdings' Response to Motion to Amend at 7 (citing State Distributors, Inc. v. Glenmore Distilleries Co., 738 F.2d 405, 416 (10th Cir. 1984)). Accordingly, Airswift Holdings requests that the Court deny joinder. See Airswift Holdings' Response to Motion to Amend at 8.

10.     **Chevron U.S.A.'s Response to Motion to Remand and to Motion to Amend.**

Chevron U.S.A. responds to the Motion to Remand and to the Motion to Amend. See Defendant Chevron U.S.A. Inc.'s Response in Opposition to Plaintiff's Motion for Remand at 1, filed December 14, 2017 (Doc. 25)("Chevron U.S.A. Response to Motion to Remand"); Defendant Chevron U.S.A. Inc.'s Response in Opposition to Plaintiff's Motion for Leave to Amend at 1, filed December 14, 2017 (Doc. 26)("Chevron U.S.A. Response to Motion to Amend"). Chevron U.S.A. joins and adopts the arguments that Airswift Holdings asserts in Airswift Holdings' Response to Motion to Remand and in Airswift Holdings' Response to Motion to Amend. See Chevron U.S.A. Response to Motion to Remand at 1-2; Chevron U.S.A. Response to Motion to Amend at 1.

11.     **The Reply.**

Hernandez replies to: (i) Airswift Holdings' Response to Motion to Remand; (ii) Airswift Holdings' Response to Motion to Amend; (iii) Chevron U.S.A. Response to Motion to Remand; and (iv) Chevron U.S.A. Response to Motion to Amend. See Plaintiffs' Reply in Support of Plaintiff's Motion for Leave to File First Amended Complaint to add Swift Technical Services,

L.L.C. as an Additional Party, and to Remand Pursuant to 28 U.S.C. § 1447(e) (Doc. 18) and Plaintiff's Motion to Remand at 1, filed December 28, 2017 (Doc. 27)("Reply").  Hernandez argues that, although the Court has discretion to choose whether to resolve the personal jurisdiction issue before the subject-matter jurisdiction issue, the Court should resolve the subject-matter jurisdiction issue first, because they "are straight-forward, do not require additional discovery," and implicate the "entire case."  Reply at 1-2.  Hernandez contends that joinder is proper and that, contrary to Airswift Holdings' contentions, Hernandez was unaware that Swift Technical could be implicated in this case before Airswift Holdings filed the Notice of Removal.  See Reply at 4-5.  Hernandez argues that Swift Technical is a necessary party under rule 19, because, without Swift Technical as a party, "the Court cannot grant complete relief," as Swift Technical "is a separate entity whose negligence will be determined independently from the negligence" of the remaining Defendants.  Reply at 7.  Hernandez adds that Swift Technical is also a necessary party, because Chevron U.S.A. and Grand Isle will not "adequately represent its interests," and because Swift Technical will be subject to "non-party subpoenas," thus subjecting it to "potentially double, multiple, or otherwise inconsistent obligations."  Reply at 8-9.

Hernandez also contends that joinder is proper under rule 20 of the Federal Rules of Civil Procedure.  See Reply at 9-11. He argues that the equities favor joinder, because, otherwise, Hernandez would be forced to pursue a parallel state proceeding, triggering "the attendant host of problems and waste of judicial resources such parallel proceedings inevitably will present."  Reply at 10-11.  He argues other equities favor joinder, specifically that Airswift Holdings is the "only defendant that requested removal," but is also the only Defendant who filed a motion to dismiss for lack of personal jurisdiction.  Reply at 11.

Hernandez asserts that Airswift Holdings has not demonstrated by a preponderance of the evidence that all Defendants are diverse from all Plaintiffs, because Grand Isle represented to the New Mexico Secretary of state that its "Principal Office Outside of New Mexico" is located in Odessa, Texas. Reply at 12 (citing Corporations and Business Services, New Mexico Secretary of State Search Information at 1, filed December 28, 2017 (Doc. 27-2)("SOS Search")). Hernandez concedes, however, that Airswift Holdings' Notice of Removal was timely, because "the state court record affirmatively indicates that" the New Mexico Secretary of State served Airswift Holdings on October 2, 2017. Reply at 12 n.1. Accordingly, Hernandez withdraws its timeliness arguments. See Reply at 12 n.1.

### 12.     The Hearing.

The Court held a hearing. See Draft Transcript of Motion Proceedings at 1:23 (Court)(dated August 13, 2018)("Tr.").[3] Airswift Holdings argued that it had no minimum contacts with New Mexico, "as it does no business with New Mexico." Tr. at 9:1-4 (Austin). See id. at 9:5 (Austin)("Airswift is a UK corporation."); id. at 10:11-12 (Austin)("Airswift did not provide any services or materials to Chevron's Buckeye plant."). Accordingly, it requested that the Court dismiss it for lack of personal jurisdiction. See Tr. at 10:16-21 (Austin).

Hernandez argued that a stay for jurisdictional discovery is proper, because Airswift Holdings and Swift Technical are related entities. See Tr. at 17:16-17 (Isaac). He contended that there is evidence of Airswift Holdings having contracts with Chevron U.S.A., which "tells us there may be contracts out there" touching New Mexico, which "may be impacted if the Court

---

[3]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version. If a final transcript is made, it may contain slightly different page and/or line numbers.

dismisses Airswift." Tr. at 18:14-19:12 (Isaac). He, accordingly, asked that the Court grant the stay so that he may conduct jurisdictional discovery. See Tr. at 19:17-19 (Isaac).

Chevron U.S.A. responded that it does have a contract with "Swift Technical Group, Limited," but does not have a "contract specifically with Airswift." Tr. at 21:17-21 (Anderson). See id. at 22:20-23 (Anderson). It added that it had no reason to think that Airswift Holdings had any contacts or business in New Mexico. See Tr. at 23:1-7 (Anderson, Court).

Hernandez then argued that, under 28 U.S.C. § 1447(e), the Court should allow him to join Swift Technical as a party. See Tr. at 30:18-19 (Isaac). He contended that, the four equitable factors under that statute favor joinder. See Tr. at 31:2-9 (Isaac). Hernandez argued that, most importantly, he was diligent in requesting the amendment -- asking the Court "roughly two weeks" after he learned Swift Technical is a viable Defendant. See Tr. at 32:15-19 (Isaac). He also argued that he would be prejudiced without joinder, because it would force parallel proceedings. See Tr. at 33:13-14 (Isaac). Accordingly, he requested the Court allow them to join Swift Technical, which would require the Court to remand the case for lack of jurisdiction. See Tr. at 36:22-25 (Isaac).

Airswift Holdings countered that the Hernandez' primary purpose in filing the Motion to Amend was to destroy diversity. See Tr. at 37:7-8 (Austin). It contended that Hernandez' nineteen-day delay in filing the Motion to Amend after learning of Swift Technical's viability demonstrates Hernandez' gamesmanship. See Tr. at 37:10-20 (Austin). Airswift Holdings also argued that any prejudice from parallel proceedings would be slight. See Tr. at 37:20-38:2 (Austin). Hernandez argued that a nineteen-day gap between learning of a viable defendant and filing a motion to amend "is not a lack of diligence under any scenario," especially given that it

occurred at the case's inception. See Tr. at 41:2-12 (Isaac). He averred that, on balance, the Section 1447(e) factors favor joinder. See Tr. at 42:3-7 (Isaac).

The parties briefly argued over Grand Isle's citizenship. See Tr. at 40:10-41:1 (Isaac); id. at 43:20-45:19 (Bunting, Court, Isaac). Hernandez asserted that the New Mexico Secretary of State website lists Grand Isle's principal office outside of New Mexico as Odessa, Texas. See Tr. at 40:14-17 (Isaac). Grand Isle countered that its principal place of business has always been in Louisiana, and that the New Mexico Secretary of State's representation must have resulted from a mistake. See Tr. at 45:1-13 (Bunting). The Court concluded by singling its inclination to dismiss Airswift Holdings and to allow Hernandez to add Swift Technical. See Tr. at 43:2-17 (Court). Airswift Holdings and Chevron U.S.A. agreed that, if the Court allowed Swift Technical's joinder, the Court would be required to remand the case. See Tr. at 45:25-46:12 (Anderson, Austin, Court). Hernandez subsequently filed Plaintiff's First Amended Complaint for Personal Injuries, filed August 13, 2018 (Doc. 42)("Amended Complaint"), adding Swift Technical as a Defendant. See Amended Complaint ¶ 5, at 2.

## LAW REGARDING PERSONAL JURISDICTION

When contested,[4] the party asserting the claim has the burden of proving personal jurisdiction. See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). To assert personal jurisdiction over a nonresident defendant, federal courts must satisfy state law and federal due process. See Doering v. Copper Mountain, Inc., 259 F.3d 1201, 1209-10 (10th Cir. 2001). Under due process, the Court's jurisdiction exists if the defendants have "minimum contacts" with the forum state, which may rest on specific or general personal jurisdiction, and the exercise of personal jurisdiction must comport with "traditional notions of fair play and

---

[4]Personal jurisdiction can be waived. See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982).

substantial justice." <u>Dudnikov v. Chalk & Vermilion Fine Arts Inc.</u>, 514 F.3d 1063, 1070 (10th Cir. 2008)(quotation marks omitted). <u>See Bristol-Myers, Squibb Co. v. Superior Court of California, San Francisco Cty.</u>, 137 S. Ct. 1773, 1779-80 (2017)("<u>Bristol-Myers</u>"); <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 126 (2014).

**1.      Burden of Proof.**

As already noted, the plaintiff bears the burden of proving personal jurisdiction. <u>See Wenz v. Memery Crystal</u>, 55 F.3d at 1505. When jurisdiction is "decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing" of facts that would support the assertion of jurisdiction. <u>Wenz v. Memery Crystal</u>, 55 F.3d at 1505. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavit." <u>Behagen v. Amateur Basketball Ass'n</u>, 744 F.2d 731, 733 (10th Cir. 1984). When, however, a defendant presents credible evidence through affidavits or other materials suggesting the absence of personal jurisdiction, the plaintiff must come forward with sufficient evidence to create a genuine dispute of material fact on the issue. <u>See Doe v. Nat'l Med. Servs.</u>, 974 F.2d 143, 145 (10th Cir. 1992). Only if the plaintiff meets the obligation of contesting the credible evidence that the defendant presents does the court resolve the factual disputes in the plaintiff's favor. <u>See Wenz v. Memery Crystal</u>, 55 F.3d at 1505; <u>Behagen v. Amateur Basketball Ass'n</u>, 744 F.2d at 733; <u>Clark v. Meijer, Inc.</u>, 376 F. Supp. 2d 1077, 1082 (D.N.M.2004)(Browning, J.).

**2.      Due Process and Personal Jurisdiction.**

The personal-jurisdiction due process analysis is two-fold. <u>See Fabara v. GoFit, LLC</u>, 308 F.R.D. 380, 400 (D.N.M. 2015)(Browning, J.). First, the defendant must have "minimum contacts" with the forum state such that it "should reasonably anticipate being haled into court

there." Burger King Corp. v. Rudzewicz, 471 U.S. at 473-76. Second, exercising personal jurisdiction over the defendant must comport with "traditional notions of fair play and substantial justice." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1070 (quotation marks omitted). A defendant may have "minimum contacts" with the forum state in one of two ways, providing a court with either general or specific personal jurisdiction. Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532-33 (10th Cir. 1996)(citations omitted).

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim be related to those contacts. Specific jurisdiction, on the other hand, is premised on something of a *quid pro quo:* in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078. Thus, "[s]uch contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities." Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011).

For a court to exercise specific jurisdiction "'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" Bristol-Myers, 137 S. Ct. at 1780 (quoting Daimler AG v. Bauman, 571 U.S. at 127)(alterations and emphasis in Bristol-Myers). See Bristol-Myers, 137 S. Ct. at 1781 ("[T]here must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.")(quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)("Goodyear")); Burger King Corp. v. Rudzewicz, 471 U.S. at 472 (ruling that a court may assert specific jurisdiction "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.")(citations and quotation marks omitted). The United States Court of Appeals for the

Tenth Circuit has characterized this inquiry as a two-part test: "[F]irst . . . the out-of-state defendant must have 'purposefully directed' its activities at residents in the forum state, and second, . . . the plaintiff's injuries must 'arise out of' defendant's forum-related activities." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1071. The Supreme Court of the United States of America has recently emphasized that, "[f]or specific jurisdiction, a defendant's general connections with the forum are not enough." Bristol-Myers, 137 S. Ct. at 1781. In the tort context, a defendant has "purposefully directed" his activities at New Mexico or its residents when he or she has: (i) taken intentional action; (ii) the action was "expressly aimed" at New Mexico; and (iii) the action was taken with the knowledge that "the brunt of th[e] injury" would be felt in New Mexico. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1072 (quoting Calder v. Jones, 465 U.S. 783, 789-90 (1984)).

Although agreements alone are likely to be insufficient to establish minimum contacts, "'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'" TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d 1282, 1287-88 (10th Cir. 2007)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. at 473, 478). The mere foreseeability of harm occurring in a particular forum will not support a finding of minimum contacts. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 295 (holding that, although "an automobile is mobile by its very design and purpose," thus indicating that it is foreseeable that a particular automobile may cause injury in a forum state, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause"). "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and

connection with the forum State are such that he should reasonably anticipate being haled into court there." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297. As the Tenth Circuit has further explained, because "mere foreseeability" is not sufficient to establish minimum contacts, a plaintiff "must establish . . . not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook intentional actions that were expressly aimed at that forum state." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1077.

General personal jurisdiction jurisprudence has "followed [a] markedly different trajector[y]" than specific personal jurisdiction. Daimler AG v. Bauman, 571 U.S. at 132. The test for general personal jurisdiction turns on whether the defendant is "at home" within the forum state. Daimler AG v. Bauman, 571 U.S. at 137. For individuals, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Daimler AG v. Bauman, 571 U.S. 137 (quoting Goodyear, 564 U.S. at 924). For corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction." Daimler AG v. Bauman, 571 U.S. at 137 (quoting Goodyear, 564 U.S. at 924). In Daimler AG v. Bauman, the Supreme Court rejected an argument that "continuous or systematic" contacts within a forum state were, in and of themselves, sufficient to subject a corporation to general personal jurisdiction. Daimler AG v. Bauman, 571 U.S. at 137-38. In so doing, the Supreme Court reemphasized that a corporation is most often exposed to general personal jurisdiction only if that entity is incorporated in the forum state or if the forum state hosts the entity's principal place of business. See Daimler AG v. Bauman, 571 U.S. at 138-39.

Once minimum contacts have been established, a court turns to traditional notions of fair play and substantial justice.

If [the defendant] is found to have the requisite minimum contacts with [the forum state], then we proceed to the second step in the due process analysis: ensuring that the exercise of jurisdiction over him does not offend "traditional notions of fair play and substantial justice." See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). [The defendant] bears the burden at this stage to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1080 (10th Cir. 2008). We consider the following five factors, . . . in deciding whether the exercise of jurisdiction would be fair:

(1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

Id. (brackets omitted); see also OMI Holdings, Inc., 149 F.3d at 1095 (applying these factors in a case involving a Canadian corporation). "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." TH Agric. & Nutrition, LLC, 488 F.3d at 1292 (internal quotation marks and brackets omitted).

Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1167 (10th Cir. 2011). The Supreme Court has recently emphasized that, among the factors, the primary concern "is 'the burden on the defendant.'" Bristol-Myers, 137 S. Ct. at 1780 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). "Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." Bristol-Myers, 137 S. Ct. at 1780.

Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

Bristol-Myers, 137 S. Ct. at 1780-81 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 294).

In Silver v. Brown, 678 F. Supp. 2d 1187 (D.N.M. 2009)(Browning, J.), aff'd in part and rev'd in part, 382 F. App'x. 723 (10th Cir. 2010), the Court considered whether it had personal jurisdiction over defendants who allegedly slandered, defamed, and caused the plaintiff -- Michael Silver -- distress, by posting a blog on the internet that portrayed him in a negative light. See 678 F. Supp. 2d at 1204. The Court determined that it did not have personal jurisdiction over defendant Jack McMullen, because Silver failed to demonstrate that McMullen "was significantly associated with the blog or controlled it in any way." 678 F. Supp. 2d at 1212. The Court also concluded that it did not have personal jurisdiction over the blog post's author -- Matthew Brown -- because he was not domiciled in New Mexico, had not traveled to New Mexico, and did not transact business there. See 678 F. Supp. 2d at 1211. The Court said that Brown's blog posts similarly did not establish personal jurisdiction, because

> the blog is closer to an informative website than a commercial website. No services are offered, and Brown is not collecting revenue from the website. Brown does not interact with the people who post information on the blog. Brown, to the Court's knowledge, did not solicit negative postings on the website. Further, even though people in New Mexico can view the website, the blog is not a website that is directed solely at the people of New Mexico. The number of people who can access the website in New Mexico in comparison to those who are able to access the website throughout the world, or even in the United States, according to the statistics that Silver provided at the hearing, is nominal.

678 F. Supp. 2d at 1211-12.

On appeal, the Tenth Circuit affirmed the Court's holding as to McMullen, but reversed its decision as to Brown. See 382 F. App'x. at 727-32. In an opinion that the Honorable Monrow G. McKay, United States Circuit Judge for the Tenth Circuit, authored, and Judges Broby and Ebel joined, the Tenth Circuit applied the three-part test from Calder v. Jones to

conclude that the Court had personal jurisdiction over Brown. See 382 F. App'x. at 727-32. Judge McKay first explained that the posting of the blog was "clearly an intentional act" designed to damage the plaintiff's reputation. 382 F. App'x. at 729. Second, Judge McKay said that Brown had "expressly aimed his blog at New Mexico," where Silver, his business, and the majority of his customers were located. 382 F. App'x. at 729. Judge McKay noted: "It was about a New Mexico resident and a New Mexico company. The blog complained of Mr. Silver's and [his business'] actions in the failed business deal. Those actions occurred mainly in New Mexico." 382 F. App'x. at 729-30. Third, Judge McKay explained that Brown knew Silver would suffer the brunt of his injury in New Mexico, as the state was "unquestionably the center of his business activities." 382 F. App'x. at 730.

In several other recent cases, the Court addressed whether it could assert general or specific jurisdiction over non-individual entities. In Fabara v. GoFit, LLC, 308 F.R.D. 380 (D.N.M.2015)(Browning, J.), a plaintiff -- injured by an allegedly defective exercise ball in New Mexico -- brought suit against the manufacturer, which was incorporated and headquartered in Oklahoma. See 308 F.R.D. at 408. The manufacturer moved to dismiss the complaint, under rule 12(b)(2), arguing that the Court lacked general jurisdiction, because its contacts with New Mexico were neither continuous nor systematic. See 308 F.R.D. at 384. The plaintiff responded with photographs of the manufacturers' products in several stores, arguing that the manufacturer delivered the exercise balls into the stream of commerce with the expectation that New Mexico customers would purchase and use them. See 308 F.R.D. at 389. The Court rejected this theory, explaining that the manufacturer's contacts with New Mexico were not "so systematic and continuous as to make it essentially at home here." 308 F.R.D. at 397. The Court noted that the manufacturer had almost no physical connections with New Mexico and that its New Mexico

internet sales -- roughly $20,000.00 over nine years -- were insufficiently "substantial" to support general jurisdiction. 308 F.R.D. at 402-03.

In <u>Diener v. Trapeze Asset Management, Inc.</u>, 2015 WL 8332933 (D.N.M. Nov. 30, 2015)(Browning, J.), the Court considered whether it had specific jurisdiction over a Canadian asset-management firm that maintained a passive website, placed its name in a third party's money-manager listing, mailed marketing materials to New Mexico, had telephone conversations with plaintiffs located in New Mexico, and ultimately entered into a contract with plaintiffs located in New Mexico. <u>See</u> 2015 WL 8332933, at *1. The Court concluded that it did not have specific jurisdiction for four primary reasons. <u>See</u> 2015 WL 8332933, at *1. First, the website was wholly passive and did not allow visitors "the opportunity to invest or interact with the site." 2015 WL 8332933, at *15. Second, the third-party listing was similarly passive. <u>See</u> 2015 WL 8332933, at *15. Third, the Court noted that "phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts," noting that the alleged torts occurred in Canada. 2015 WL 8332933, at *17 (quoting <u>Benton v. Cameco Corp.</u>, 375 F.3d 1070, 1077 (10th Cir. 2004)). Fourth, the plaintiffs reached out to the defendants to create the contractual relationship, distinguishing the case from others finding purposeful availment. <u>See</u> 2015 WL 8332933, at *17 (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. at 473).

Finally, in <u>Resource Associates Grant Writing & Evaluation Servs., Inc. v. Southampton Union Free School Dist.</u>, 193 F. Supp. 3d 1200 (D.N.M. 2016)(Browning, J.), the Court considered whether it had personal jurisdiction over a school district that had never conducted any business in New Mexico, had never sent a representative to New Mexico, and its only contacts with a New Mexico entity were via telephone and email correspondence that the New Mexico company had initiated. <u>See</u> 193 F. Supp. 3d at 1239. Highlighting the contractual nature

of the particular contacts at issue, and that due process may be satisfied in contractual relations if the defendant "'reache[s] out' to the forum state," the Court concluded it could not exercise personal jurisdiction over the school district, because the school district did not "not reach out to New Mexico to enter into an agreement"; rather, the New Mexico entity had initiated the communications and contract.   193 F. Supp. 3d at 1241-43 (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. at 479-85).

**LAW REGARDING REMOVAL**

"If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court 'embracing the place where such action is pending.'"   <u>Thompson v. Intel Corp.</u>, 2012 WL 3860748, at *4 (quoting 28 U.S.C. § 1441(a)).   <u>See Huffman v. Saul Holdings Ltd. P'ship.</u>, 194 F.3d 1072, 1076 (10th Cir. 1999)).   Defendants may remove a civil action to federal court where the district court would have original jurisdiction over the case based upon diversity of citizenship.   <u>See Huffman v. Saul Holdings Ltd. P'ship.</u>, 194 F.3d at 1076 (citing <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996)).   Nonetheless, federal courts "are to . . . narrowly [construe removal statutes] in light of our constitutional role as limited tribunals."   <u>Pritchett v. Office Depot, Inc.</u>, 404 F.3d 1090, 1095 (10th Cir. 2005)(citing <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108-09 (1941).   <u>See United States ex rel. King v. Hillcrest Health Ctr.</u>, 264 F.3d 1271, 1280 (10th Cir. 2001)).   "All doubts are to be resolved against removal."   <u>Fajen v. Found. Reserve Ins. Co.</u>, 683 F.2d 331, 333 (10th Cir. 1982).   The defendant seeking to remove an action to federal court bears the burden of establishing the district court's subject-matter jurisdiction over the case.   <u>See Montoya v. Chao</u>, 296 F.3d 952, 955 (10th Cir. 2002).

1.        **The Presumption Against Removal**.

Federal courts are courts of limited jurisdiction; thus, there is some measure of a presumption against removal jurisdiction which must be overcome by the defendant seeking removal.  See Fajen v. Found. Reserve Ins. Co., 683 F.2d at 333; Bonadeo v. Lujan, 2009 WL 1324119, *4 (D.N.M. 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").   The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence."  McPhail v. Deere & Co., 529 F.3d at 953.  See also Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").

2.        **Procedural Requirements for Removal**.

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed."  Thompson v. Intel Corp., 2012 WL 3860748, at *5.  A removal which does not comply with the express statutory requirements is defective and must be remanded to state court. See Huffman v. Saul Holdings Ltd. P'ship, 194 F .3d at 1077.  See also Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United States Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  28 U.S.C. § 1446(a).  Such notice of removal is proper if filed

within thirty days from the date when the case qualifies for federal jurisdiction. See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b). The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available. Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998). The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.

### 3. **Amendment of the Notice of Removal.**

In Caterpillar, Inc. v. Lewis, the Supreme Court held that a defect in subject-matter jurisdiction cured before entry of judgment did not warrant reversal or remand to state court. See 519 U.S. at 70-78. Similarly, citing Caterpillar, Inc. v. Lewis, the Tenth Circuit has held that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court." Browning v. Am. Family Mut. Ins. Co., 196 F. App'x 496, 505-06 (10th Cir. 2010). In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir. 1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit found on appeal defects in the notice of removal, including that the notice failed to properly allege diversity of citizenship. See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . ."). The United States Court of Appeals for the Seventh Circuit permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction. See 150 F.3d at 653-54.

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal. See Jenkins v. MTGLQ Investors, 218 F. App'x. 719, 723 (10th Cir.

2007)(unpublished)(granting unopposed motion to amend notice of removal to properly allege jurisdictional facts); Watkins v. Terminix Int'l Co., 1997 WL 34676226, at *2 (10th Cir. 1997)(per curiam)(unpublished)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts); Lopez v. Denver & Rio Grande W.R.R. Co., 277 F.2d 830, 832 (10th Cir. 1960)("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present."). The Tenth Circuit has further reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window has expired, when the defendant makes simple errors in its jurisdictional allegations, "would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts." Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968). The Tenth Circuit noted that a simple error in a jurisdictional allegation includes failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship. Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301. In McEntire v. Kmart Corp., 2010 WL 553443 (D.N.M. 2010)(Browning, J.), when faced with insufficient allegations in the notice of removal -- allegations of "residence" not "citizenship" -- the Court granted the defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements." 2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 300-02 (10th Cir. 1968)). Further, in Thompson v. Intel Corp., the Court permitted the defendant Intel Corp. to amend its notice of removal to include missing jurisdictional elements,

including evidence that its principal place of business and corporate headquarters -- the center of Intel Corp.'s direction, control, and coordination of activities -- is out of state, so that the diversity requirements were met. See 2012 WL 3860748, at *1.

There are limits to the defects which an amended notice of removal may cure, as Professors Wright and Miller have explained:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives: It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount. In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

14 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3733, at 651-59 (4th ed. 2009)(footnotes omitted). Professor Moore has similarly recognized: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction." 16 James William Moore, Moore's Federal Practice, § 107.30[2][a][iv], at 107-184 (3d ed. 2012). Thus, where diversity jurisdiction is asserted as a basis for removal of an action to federal court, the district court may permit the removing defendant to amend its removal notice, if necessary, to fully allege facts which satisfy the requirements of diversity jurisdiction by a preponderance of the evidence.

> **4.      Consideration of Post-Removal Evidence.**

As the Court has previously explained, the Tenth Circuit looks to both evidence in the complaint and submitted after the complaint in determining whether the criteria necessary for removal are met. See Thompson v. Intel Corp., 2012 WL 3860748, at *8 (citing McPhail v. Deere & Co., 529 F.3d at 956). The Tenth Circuit explained, in McPhail v. Deere & Co., that a district court may have evidence presented to a district court after a notice of removal has been

filed, even if produced at a hearing on subject-matter jurisdiction, to determine if the jurisdictional requirements are met. See 529 F.3d at 593. "[B]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy -- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward." 529 F.3d at 593 (citing Meridian Secs. Ins. Co. v. Sadowski, 441 F.3d 536, 541-42 (7th Cir. 2006)(Easterbrook, J.), and Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)). As the Court has explained, "the Seventh Circuit, on which the Tenth Circuit has heavily relied when addressing the amount in controversy, has recognized that 'events subsequent to removal may clarify what the plaintiff was actually seeking when the case was removed.'" Aranda v. Foamex Int'l, 2012 WL 2923183, at *18 (D.N.M. 2012)(Browning, J.)(quoting Carroll v. Stryker Corp., 658 F.3d 675, 681 (7th Cir. 2011)).[7] Thus, when determining if the requirements for federal jurisdiction are met in a

_____

[7]The Court has concluded that the language in McPhail v. Deere & Co., to some extent, conflicts with older Tenth Circuit decisions, but nevertheless defines the scope of evidence that a district court may consider when determining its jurisdiction over a matter removed from state court:

> McPhail v. Deere & Co. appears to conflict with the Tenth Circuit's previous decisions in Laughlin v. Kmart Corp., and Martin v. Franklin Capital Corp.. In Laughlin v. Kmart Corp., the Tenth Circuit held that "Kmart's economic analysis of Laughlin's claims for damages prepared after the motion for removal and purporting to demonstrate the jurisdictional minimum does not establish the existence of jurisdiction at the time the motion was made." 50 F.3d at 873. In Martin v. Franklin Capital Corp., the Tenth Circuit held that the defendant's summary of the allegations and the requested relief "[did] not provide the requisite facts lacking in the complaint." 251 F.3d at 1291.

Aranda v. Foamex Int'l, 2012 WL 2923183, at * 15. The Court explained that, although there is some conflicting precedent within the Tenth Circuit on this matter, it is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists, in light of the Tenth Circuit's clarification of its precedents in McPhail v. Deere & Co. Aranda v. Foamex Int'l, 2012 WL 2923183, at *11-12. Indeed, the Tenth Circuit admitted that its "opinions have not been entirely clear on [this amount-in-controversy] issue," but held that its ruling in McPhail

matter removed from state court, a district court may consider evidence submitted after removal. See Thompson v. Intel Corp., 2012 WL 3860748, at *14 ("[I]t is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists.").

### 5. **Fraudulent Joinder.**

A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction. See Am. Nat'l Bank & Trust Co. v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991); Hernandez v. Menlo Logistics, Inc., No. CIV 12-0907, 2013 WL 5934411, at *14-17 (D.N.M. Sept. 30, 2013)(Browning, J.). A defendant may remove on the basis of fraudulent joinder either while the nondiverse party is still joined or after it is dismissed from the case -- the doctrine can thus function as an exception to either complete diversity or the voluntary-involuntary rule. "'[A] fraudulent joinder analysis [is] a jurisdictional inquiry,'" Bio-Tec Envtl.,

---

v. Deere & Co. was consistent with the Tenth Circuit's prior holdings and analysis. McPhail v. Deere & Co., 529 F.3d at 954-55. Describing its holding in Martin v. Franklin Capital Corp., in which the Tenth Circuit states that a defendant must "establish the jurisdictional amount by a preponderance of the evidence," the Tenth Circuit said "it would have been more precise to say that the defendant must affirmatively establish jurisdiction by proving jurisdictional *facts* that made it *possible* that $75,000 was in play, which the defendants in Martin failed to do." McPhail v. Deere & Co., 529 F.3d at 955 (emphasis in original). With respect to Laughlin v. Kmart Corp., the Tenth Circuit clarified that it was "presented with a petition and a notice of removal that both only referred to damages in excess of $10,000." McPhail v. Deere & Co., 529 F.3d at 955. Furthermore, the notice of removal in Laughlin v. Kmart Corp. refers only to the removal statute and "thus no jurisdictional amounts are incorporated into the removal notice by reference to the statute." 50 F.3d at 873. Accordingly, even though there is some tension between these decisions, because the Tenth Circuit, in McPhail v. Deere & Co., characterizes its holding as consistent with its prior decisions, and because McPhail v. Deere & Co. is the Tenth Circuit's most recent, and most thorough, discussion of how to determine the amount in controversy, the Court will focus its analysis on that case. The Court thus finds that the Tenth Circuit's approach in Laughlin v. Kmart is "on of the most restrictive approaches to removal," and the Tenth Circuit has clarified its stance to allow a court to consider post-removal evidence when determining if federal court jurisdictional requirements are met. Aranda v. Foamex Int'l, 2012 WL 2923183, at n.11.

LLC v. Adams, 792 F. Supp. 2d at 1214 (quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)), and, thus, the Tenth Circuit instructs that the district court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964)(citations omitted). "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent." Baeza v. Tibbetts, No. CIV 06-0407, 2006 WL 2863486, at *3 (D.N.M. July 7, 2006)(Vazquez, J.). The Supreme Court has stated: "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith." Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914). The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished).

The party asserting fraudulent joinder bears the burden of proof. See Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(unpublished)("The case law places a heavy burden on the party asserting fraudulent joinder."). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.). Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over

forty years earlier in <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, 378 F.2d 879 (10th Cir. 1967). The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence." <u>Smoot v. Chi., Rock Island & Pac. R.R. Co.</u>, 378 F.2d at 882.

Actual fraud -- <u>e.g.</u>, a plaintiff colluding with a nondiverse defendant to defeat removal[5] -- suffices to establish fraudulent joinder, but it is not required. <u>See</u> <u>McLeod v. Cities Serv. Gas Co.</u>, 233 F.2d 242, 246 (10th Cir. 1956)("[C]ollusion in joining a resident defendant for the sole purpose of preventing removal . . . may be shown by any means available."). In <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, the Tenth Circuit stated two other bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is a patent sham"; or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists." 378 F.2d at 882 (quoting <u>Dodd v. Fawcett Pubs., Inc.</u>, 329 F.2d 82, 85 (10th Cir. 1964)). In <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, the Tenth Circuit found fraudulent joinder, because the joined party's non-liability was "established with complete certainty upon undisputed evidence." 378 F.2d at 882. "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." <u>Smoot v. Chi., Rock Island & Pac. R.R. Co.</u>, 378 F.2d at 882. In <u>Smoot v. Chicago, Rock Island & Pacific Railroad Co.</u>, the plaintiff died when his car collided with a freight train. <u>See</u> 378 F.2d at 881. The plaintiff's estate sued the railroad

---

[5]Collusion might look something like this: a plaintiff names a nondiverse defendant under a highly dubious theory of liability; the plaintiff contacts the defendant and offers to dismiss the case at the end of the one-year limitation, <u>see</u> 28 U.S.C. § 1446(c), if the defendant agrees not to move to dismiss before the one-year mark; and the defendant agrees to the arrangement to save litigation costs, as well as to avoid any slim chance that the court decides to recognize the plaintiff's theory of liability against it.

company and joined a non-diverse alleged employee as a defendant. See 378 F.2d at 881. It was undisputed that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him." 378 F.2d at 881.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals for the Fifth Circuit. In Montano v. Allstate Indemnity Co., the Tenth Circuit quoted favorably Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000), which states:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party], in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *4-5 (alterations in original)(quoting Hart v. Bayer Corp., 199 F.3d at 246)(internal quotation marks omitted). The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced." Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2. The Tenth Circuit in Montano v. Allstate Indemnity Co. also quoted from Batoff v. State Farm Insurance Co., 977 F.2d 848 (3d Cir. 1992), which states: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." 977 F.2d at 853.

In Nerad v. AstraZeneca Pharmaceuticals, Inc., the Tenth Circuit adopted a different articulation of the burden of proof. The Tenth Circuit stated that, where fraudulent joinder is asserted, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." 203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000)). The Tenth Circuit explained that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." 203 F. App'x at 913.

The United States Court of Appeals for the Fifth Circuit recognized the inconsistencies in various articulations of the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion. For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states,
>
>> To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.
>
> 181 F.3d at 699 (emphasis added)(citing Burden v. Gen. Dynamics Corp., 60 F.3d 213, 317 (5th Cir. 1995)). The Griggs opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court." 181 F.3d at 699 (emphasis added). Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate . . . the *absence of any possibility* that the opposing party has stated a claim under state law." 16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added). It then comments: "The ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved." Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphases in original).  The Fifth Circuit has settled upon this phrasing:

> [T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").

In Zufelt v. Isuzu Motors America, LCC, 727 F. Supp. 2d 1117, 1124 (D.N.M. 2009)(Browning, J.), the Court addressed the standard that courts should use when addressing fraudulent joinder and concluded that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined.  727 F. Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5).  The Court explained:

> [T]his District has consistently adopted the "possibility" standard when assessing fraudulent joinder claims.  See Allen v. Allstate Ins. Co., No. CIV 08-0733, 2008 WL 6045497 (D.N.M. Oct. 31, 2008)(Browning, J.)(holding that the claims asserted against the non-diverse defendant were "possibly viable under New Mexico law, and . . . sufficient to preclude federal jurisdiction"); Baeza v. Tibbetts, 2006 U.S. Dist. LEXIS 95317, at *11, 2006 WL 2863486 (stating that "[r]emand is required if any one of the claims against [the defendant] is possibly viable"); Provencio v. Mendez, No. CIV 05-623, 2005 U.S. Dist. LEXIS 39012, at *25, 2005 WL 3662957 (D.N.M. Sept. 29, 2005)(Browning, J.)(stating that "there must be no possibility the [p]laintiffs have a claim against [the non-diverse defendant]"); Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal jurisdiction, "[t]he plaintiff need only demonstrate the possibility of the right to relief").  This Court, in Couch v. Astec Indus., Inc., noted with approval the language of the United States Court of Appeals for the Eleventh Circuit, which states that "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."  Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147

(quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in original).

Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1229.

In Brazell v. Waite, the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden. 2013 WL 2398893, at *3 (citing Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964); Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013)(Briscoe, C.J., joined by Seymour & Bacharach, JJ.)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)). In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust, a Texas-based national bank, Stuart T. Matheson, a Utah citizen, and Matheson's law firm. See 733 F.3d at 983, 987. The plaintiffs alleged that Matheson and his law firm enabled ReconTrust to conduct an illegal nonjudicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank. See 733 F.3d at 983. The defendants removed the case to federal court and alleged that the plaintiffs fraudulently joined the Utah defendants. See 733 F.3d at 983. The district court agreed, finding that, under Utah law, "an attorney cannot be held liable to a non-client absent fraud, collusion or privity of contract." 733 F.3d at 988. The Tenth Circuit disagreed with that characterization of Utah law, concluding instead that, in the case on which

the defendants relied, the Supreme Court of Utah "has simply limited the circumstances in which a lawyer owes a duty of care to non-clients from actions arising out of the provision of legal services." 733 F.3d at 988. In rejecting the claim of fraudulent joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson and his law firm. Or even that Matheson and his law firm are not somehow fraudulently joined. But the defendants needed to clear a high hurdle to prove something they have yet to prove, i.e., fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder, except to say that it is "a high hurdle." 733 F.3d at 989. It quoted, however, Cuevas v. BAC Home Loans Servicing, LP, a Fifth Circuit opinion that repeats the clarified standard from the Smallwood v. Illinois Central Railroad Co. case. See Dutcher v. Matheson, 733 F.3d at 988 (10th Cir. 2013)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249).

> Under the second way, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." [Smallwood v. Ill. Cent. R.R. Co., 385 F.3d at 573.] If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of *all* defendants. There is no improper joinder if the defendants' showing compels the same result for the resident and nonresident defendants, because this simply means that the plaintiff's case is ill founded as to all of the defendants. Such a defense is more properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant.

Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d at 249 (emphasis in original)(citations omitted). Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, the Tenth Circuit would likely approve this additional explanation of the fraudulent joinder standard. Accordingly, the Court will use the following standard for fraudulent joinder: whether the defendant has demonstrated that there is no possibility that the

plaintiff will obtain a judgment against an in-state defendant.  Cf. Zufelt v. Isuzu Motors Am.,
LCC, 727 F. Supp. 2d at 1124-25 (concluding that fraudulent joinder occurs when "there is no
possibility that the plaintiff would be able to establish a cause of action" against the party alleged
to be fraudulently joined).  No case sets forth the burden of proof that applies to (much rarer)
allegations of actual fraud, such as plaintiff-defendant collusion, but the Court concludes that the
clear-and-convincing standard -- the usual standard for fraud -- is appropriate, see, e.g., United
States v. Thompson, 279 F.2d 165, 167 (10th Cir. 1960)("An allegation of fraud is a serious
matter; it is never presumed and must be proved by clear and convincing evidence."  (citations
omitted)).

A less-clear issue -- at least in other courts -- is whether fraudulent joinder permits the
removal of actions that have been pending in state court for over a year.  Section 1446(c)(1)
provides: "A case may not be removed under subsection (b)(3) on the basis of jurisdiction
conferred by section 1332 more than 1 year after commencement of the action . . . ."  28 U.S.C.
§ 1446(c)(1).  Two district court cases within the Tenth Circuit addressing the issue both
concluded that fraudulent joinder does not permit the removal of actions that have been pending
in state court for over a year, but the district courts issued those opinions before Congress
amended § 1446 in 2012 to add the remainder (the omitted portion) of the sentence quoted earlier
in this paragraph: "unless the district court finds that the plaintiff has acted in bad faith in order
to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  See Chidester v.
Kaz, Inc., No. CIV 08-0776, 2009 WL 2588866, at *3 (N.D. Okla. Aug. 19, 2009)(Kern, J.);
Caudill v. Ford Motor Co., 271 F. Supp. 2d 1324, 1327 (N.D. Okla. 2003)(Eagan, J.).  Outside
the Tenth Circuit, the Courts of Appeals have said little, and district courts appear more-or-less
evenly split on the issue, with some holding that a case can be removed on the basis of fraudulent

joinder after the one-year mark, see Hardy v. Ajax Magnathermic Corp., 122 F. Supp. 2d 757, 759 (W.D. Ky. 2000); Johnson v. Heublein, Inc., 982 F. Supp. 438, 444-45 (S.D. Miss. 1997); Barnett v. Sylacauga Autoplex, 973 F. Supp. 1358, 1367 (N.D. Ala. 1997); Leslie v. BancTec Serv. Corp., 928 F. Supp. 341, 346 (S.D.N.Y. 1996); Morrison v. Nat'l Ben. Life Ins. Co., 889 F. Supp. 945, 950-51 (S.D. Miss. 1995); Saunders v. Wire Rope Corp., 777 F. Supp. 1281, 1282-83 (E.D. Va. 1991); Greer v. Skilcraft, 704 F. Supp. 1570, 1582-83 (N.D. Ala. 1989), and others concluding that the fraudulent-joinder doctrine bows to the one-year limitation, see Codner v. Am. Home Prods. Corp., 123 F. Supp. 2d 1272, 1274 (W.D. Okla. 2000); Hattaway v. Engelhard Corp., 998 F. Supp. 1479, 1481-82 (M.D. Ga. 1998); Russaw v. Voyager Life Ins. Co., 921 F. Supp. 723, 724-25 (M.D. Ala. 1996); Zumas v. Owens-Corning Fiberglas Corp., 907 F. Supp. 131, 133-34 (D. Md. 1995); Price v. Messer, 872 F. Supp. 317 (S.D. W. Va. 1995); Norman v. Sundance Spas, Inc., 844 F. Supp. 355, 356-57 (W.D. Ky. 1994); Brock v. Syntex Labs., Inc., 791 F. Supp. 721, 722-23 (E.D. Tenn. 1992); Cofer v. Horsehead Research & Dev. Co., 805 F. Supp. 541, 543-44 (E.D. Tenn. 1991); O'Rourke v. Communique Telecomms., Inc., 715 F. Supp. 828, 829 (E.D. Mich. 1989). Again, however, all of these cases came before the addition of 28 U.S.C. § 1446(c)(1), which grafted a bad-faith exception to the one-year limitation, discussed at length later in this opinion. In Aguayo v. AMCO Insurance Co., 59 F. Supp. 3d 1225, 1256 (D.N.M. Oct. 31, 2014)(Browning, J.), the Court concluded that, because § 1446(c)(1)'s bad-faith exception is procedural, rather than jurisdictional, see 59 F. Supp. 3d at 1270 (noting that Congress amended the one-year limitation to clarify that it is procedural by modeling it after the Fifth Circuit's interpretation in Tedford v. Warner-Lambert Co., 327 F.3d 423, 427 (5th Cir. 2003)), the exception extends the applicability of the fraudulent-joinder doctrine past one year. See 59 F. Supp. 3d at 1256.

The Court concludes that the addition of the bad-faith exception to the one-year limitation clarifies that the one-year limitation is procedural, rather than jurisdictional, and, thus, extends the applicability of fraudulent joinder doctrine past the one-year mark. Thus, defendants may remove a case on fraudulent joinder grounds even after it has been pending in state court for more than one year.

59 F. Supp. 3d at 1256.

Another less-than-clear issue -- again, at least, in other courts -- that concerns fraudulent joinder is whether it creates an exception to the forum-defendant rule -- which provides that even an action with complete diversity cannot be removed if any defendant is a citizen of the forum state -- in addition to creating an exception to the rule of complete diversity. See 28 U.S.C. § 1441(b)(2). Courts and commentators recite fraudulent joinder as involving the legally unjustifiable naming of a nondiverse party, a party who defeats complete diversity, or a diversity-spoiling party, but, before the Court's opinion in Aguayo v. AMCO Insurance Co., no case addressed whether the doctrine extends to the wrongful naming of a diverse party whose inclusion in the lawsuit nonetheless defeats removal because of the party's status as a citizen of the forum state. See Brazell v. Waite, 525 F. App'x at 884 & n.3 (implying, but not holding or stating clearly, that fraudulent joinder is an exception to the forum-defendant rule, and noting an "apparent lack of ruling from any federal appellate court, and [a] split among district courts, on the issue" (citing Morris v. Nuzzo, 718 F.3d 660, 666 (7th Cir. 2013))); Hernandez v. Cooper Tire & Rubber Co., No. CIV 12-1399, 2013 WL 141648, at *2 n.2 (D. Kan. Jan. 11, 2013) (Lungstrum, J.)("Some courts have extended the fraudulent joinder doctrine to diverse, in-state defendants in light of the forum defendant rule . . . ." (citing Morris v. Mid-Century Ins. Co., No. CIV 12-0578, 2012 WL 3683540, at *5 (S.D. Ind. Aug. 24, 2012), vacated and remanded sub nom. Morris v. Nuzzo, 718 F.3d 660)). Although the policy justifications behind the fraudulent-joinder doctrine would seem to apply just as strongly to the forum-defendant rule as

they do to complete diversity, there is an important legal distinction between the two requirements: complete diversity is a requirement of original subject-matter jurisdiction and is found in § 1332; the forum-defendant rule is unique to removal jurisdiction -- it does not apply to cases filed in federal court in the first instance -- and is found in § 1441. See 28 U.S.C. §§ 1332(a), 1441(b)(2). Fraudulent joinder, however, applies only in the removal context and does no work in cases filed in federal court in the first instance. Thus, in Aguayo v. AMCO Insurance Co., the Court concluded that the fraudulent-joinder doctrine applies equally to joining non-diverse parties as it does to joining forum-citizen defendants. See 59 F. Supp. 3d at 1257.

> As such, the Court sees no principled reason to limit fraudulent-joinder doctrine's application to the joining of nondiverse parties to defeat complete diversity, while excluding the functionally identical practice of fraudulently joining forum-citizen defendants to defeat the forum-defendant rule. The Court, therefore, construes fraudulent-joinder doctrine as permitting removal whenever a plaintiff fraudulently joins a party that defeats removal jurisdiction, whether that defeat comes by way of complete diversity or the forum-defendant rule.

Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d at 1257.

The Tenth Circuit cannot review a district court's order to remand based on a finding of fraudulent joinder. See Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order). The fraudulent joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry. See Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247.

**6.       Procedural Misjoinder.**[6]

Rule 20 of the Federal Rules of Civil Procedure provides:

**(a)       Persons Who May Join or Be Joined.**

> **(1)       Plaintiffs.**  Persons may join in one action as plaintiffs if:
>
>> **(A)**       they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>>
>> **(B)**       any question of law or fact common to all plaintiffs will arise in the action.
>
> **(2)       Defendants.**  Persons -- as well as a vessel, cargo, or other property subject to admiralty process in rem -- may be joined in one action as defendants if:
>
>> **(A)**       any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>>
>> **(B)**       any question of law or fact common to all defendants will arise in the action.
>
> **(3)       Extent of Relief.**  Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded.  The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

---

[6]The Court refers to the doctrine as "procedural misjoinder," rather than "fraudulent misjoinder," because of the confusion that the word "fraudulent" has caused in the fraudulent joinder context.  As the Honorable Martha A. Vasquez, then-Chief District Judge for the United States District Court for the District of New Mexico, once explained: "Fraudulent joinder is a term of art.  It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant."  Baeza v. Tibbetts, No. CIV 06-0407, 2006 WL 2863486, at *1 n.1 (D.N.M. July 7, 2006)(Vasquez, J.).  The Court will refer to the doctrine as "procedural misjoinder" to avoid expanding that confusion.  Flores-Duenas v. Briones, 2013 WL 6503537, at *22 n.8.

Fed. R. Civ. P. 20(a).

"Procedural misjoinder," also known as "fraudulent misjoinder," is a recent development that is related to fraudulent joinder, but distinct from it. Professor E. Farish Percy of the University of Mississippi School of Law has explained:

> Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the plaintiff has no reasonable procedural basis to join such defendants in one action. While the traditional fraudulent joinder doctrine inquires into the substantive factual or legal basis for the plaintiff's claim against the jurisdictional spoiler, the fraudulent misjoinder doctrine inquires into the procedural basis for the plaintiff's joinder of the spoiler. Most state joinder rules are modeled after the federal joinder rule that authorizes permissive joinder of parties when the claims brought by or against them arise "out of the same transaction, occurrence, or series of transactions or occurrences" and give rise to a common question of law or fact. Thus, in a case where the joined claims are totally unrelated, a federal district court may find removal jurisdiction pursuant to the fraudulent misjoinder doctrine even though the plaintiff has a reasonable substantive basis for the claim against the jurisdictional spoiler.

E. Farish Percy, Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine, 29 Harv. J.L. & Pub. Pol'y 569, 572 (2006)(footnotes omitted).

The United States Court of Appeals for the Eleventh Circuit formulated the doctrine in Tapscott v. MS Dealer Service Corp. and explained its purpose as follows:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).

Tapscott v. MS Dealer Serv. Corp., 77 F.3d at 1360 (footnote omitted).

The facts of Tapscott v. MS Dealer Service Corp. illustrate the doctrine's operation. The case involved two proposed state-law class actions, joined together in a single case: (i) a class action in which an Alabama resident alleged that four defendants, including an Alabama

resident, had violated various provisions of Alabama fraud and consumer-protection law in connection with the "sale of 'service contracts' on automobiles sold and financed in Alabama," 77 F.3d at 1355; and (ii) a class action in which Alabama alleged three defendants, including Lowe's Home Centers, a North Carolina resident, had violated Alabama consumer-protection law in connection with the sale of retail product, see 77 F.3d at 1355.  The second class action named Lowe's Home Centers as "the putative defendant class representative for a 'merchant' class."  77 F.3d at 1355.  This unified case matched particular plaintiffs "with particular defendants against whom they allege individual claims"; as relevant here, the only two class representatives for the class action were Alabama residents, and they asserted claims only against Lowe's Home Centers.  77 F.3d at 1359-60.

The district court concluded that there was no allegation of joint liability or conspiracy, and that the claims involved in the car-sales class action were "wholly distinct from the alleged transactions involved in the" retail-products class action.  77 F.3d at 1360.  Rather, "[t]he only similarity between" the two classes was that they both alleged violations of Alabama statutory law; "[s]uch commonality on its face [was] insufficient for joinder."  77 F.3d at 1360.  The Eleventh Circuit agreed and explained:

> Although certain putative class representatives may have colorable claims against resident defendants in the putative "automobile" class, these resident defendants have no real connection with the controversy involving [the retail-products plaintiffs and] Lowe's in the putative "merchant" class action.  We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder.  We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.

77 F.3d at 1360.

The procedural misjoinder doctrine's reach outside the Eleventh Circuit is unclear.  The Tenth Circuit recently described the doctrine's status as follows: "It appears that the Fifth Circuit

may also accept procedural misjoinder. No circuit has rejected the doctrine, but the district courts and the commentators are split." Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739 (citing, for the proposition that the Fifth Circuit accepts the doctrine, Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d at 532-33; In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002)). While the Tenth Circuit recognized that "[t]here may be many good reasons to adopt procedural misjoinder," it declined to adopt the doctrine, because it would not have changed the result in that case. Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739. See 14B Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 3723, at 867-77 & n.122 (3d ed. 2009)(confirming the developing doctrine's unclear status). The Court, however, has adopted the doctrine and applied it in two cases, although it concluded in both cases that no procedural misjoinder occurred, and both cases thus resulted in remand. See Ullman v. Safeway Ins. Co., 995 F. Supp. 2d 1196 (D.N.M. 2013)(Browning, J.); Flores-Duenas v. Briones, 2013 WL 6503537, at *1.

## LAW REGARDING DIVERSITY JURISDICTION

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'" Thompson v. Intel Corp., 2012 WL 3860748, at *12 (citing 28 U.S.C. § 1332(a)). As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute." McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *3 (D.N.M. 2010)(Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806), overruled in part by Louisville & N.R. Co. v. Mottley, 211 U.S. 149 (1908); McPhail v. Deere &

- 45 -

Co., 529 F.3d at 951).  The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation." Valdez v. Metro. Prop. & Cas. Ins. Co., 867 F. Supp. 2d 1143, 1163 (D.N.M. 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956).  The Court will discuss the two requirements in turn.

1.      **Diversity in Citizenship.**

For diversity jurisdiction purposes, a person's domicile determines citizenship. See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 2013).  "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the filing of the lawsuit." McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *3 (citing Crowley v. Glaze, 710 F.2d at 678).  See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)("We have consistently held that if jurisdiction exists at the time an action is commenced such jurisdiction may not be divested by subsequent events.").  If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth. See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin.  The domicile of origin which the law attributes to  an individual is the domicile of  his parents.  It continues until another domicile is lawfully acquired.").  Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship." McEntire v. Kmart Corp., 2010 U.S. Dist. LEXIS 13373, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)).  A corporation, on the other hand, is "'deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of  business.'" Gadlin v. Sybron Int'l Corp., 222 F.3d 797, 799 (10th Cir. 2000)(quoting 28 U.S.C. § 1332(c)(1)).

## 2.     **Amount in Controversy.**

The statutory amount-in-controversy requirement, which presently stands at $75,000.00, must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs aggregate their claims against a single defendant to exceed the threshold. Martinez v. Martinez, 2010 U.S. Dist. LEXIS 38109, at *18 (D.N.M. 2010)(Browning, J.). If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims. See Alberty v. W. Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957); Martinez v. Martinez, 2010 U.S. Dist. LEXIS 38109, at *18. Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct." Martin v. Franklin Capital Corp., 251 F.3d 1284, 1292 (10th Cir. 2001)(Seymour, C.J.), abrogated on other grounds by Dart Cherokee Basin Operating Co. v Owens, 135 S. Ct. 547 (2014). Multiple claims by the same plaintiff against the same defendant may be aggregated, even if the claims are entirely unrelated. See 14A Charles A. Wright et al., Federal Practice and Procedure, Jurisdiction § 3704, at 566-95 (4th ed. 2011). While the rules on aggregation sound complicated, they are not in practice: if a single plaintiff -- regardless whether he or she is the only plaintiff who will share in the recovery -- can recover over $75,000.00 from a single defendant -- regardless whether the defendant has jointly liable co-defendants -- then the court has original jurisdiction over the dispute between that plaintiff and that defendant. The court can then exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a),

meaning that they "derive from a common nucleus or operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1996).

Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. See McPhail v. Deere & Co., 529 F.3d at 953, 955 ("[T]he defendant must affirmatively establish jurisdiction by proving jurisdictional facts that ma[k]e it possible that $75,000 [i]s in play."). In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." McPhail v. Deere & Co., 529 F.3d at 955. The Tenth Circuit's decision in McPhail v. Deere & Co. has foreclosed such an option from a plaintiff who wishes to remain in state court. McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 [is] in play." 529 F.3d at 955.

The Supreme Court recently clarified that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. See Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. at 554. The district court should consider outside evidence and find by a preponderance of the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation." Dart Cherokee Basin Operating Co., LLP v. Owens, 135 S. Ct. at 554.

## LAW REGARDING MOTIONS TO AMEND

"While Rule 15 governs amendments to pleadings generally, rule 16 of the Federal Rules of Civil Procedure governs amendments to scheduling orders." Bylin v. Billings, 568 F.3d 1224,

1231 (10th Cir. 2009)(citing Fed. R. Civ. P. 16(b)).  When a court has not entered a scheduling order in a particular case, rule 15 governs amendments to a plaintiff's complaint.  See Fed. R. Civ. P. 15.  When a scheduling order governs the case's pace, however, amending the complaint after the deadline for such amendments implicitly requires an amendment to the scheduling order, and rule 16(b)(4) governs changes to the scheduling order.  See Bylin v. Billings, 568 F.3d at 1231.

Rule 15(a) of the Federal Rules of Civil Procedure provides:

**(1) Amending as a Matter of Course.**  A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under rule 12(b), (e), or (f), whichever is earlier.

**(2) Other Amendments.**  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(bold and italics in original).  Further, the local rules provide that, with respect to motions to amend a pleading, "[a] proposed amendment to a pleading must accompany the motion to amend."  D.N.M.LR-Civ. 15.1.

Under rule 15(a), the court should freely grant leave to amend a pleading where justice so requires.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.); Youell v. Russell, 2007 WL 709041, at *1-2 (D.N.M. 2007)(Browning, J.); Burleson v. ENMR-Plateau Tele. Coop., 2005 WL 3664299, at *1-2 (D.N.M. 2005)(Browning, J.).  The Supreme Court has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . [,] repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  Fomen v. Davis, 371 U.S. 178, 182 (1962).  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001); In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.

A court should deny leave to amend under rule 15(a) where the proposed "amendment would be futile."  Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv., 175 F.3d 848, 859 (10th Cir. 1999).  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.  An amendment is "futile" if the pleading, "as amended, would be subject to dismissal."  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Commc'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)).  A court may also deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed."  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)).  See Youell v. Russell, 2007 WL 709041, at *2-3; Lymon v. Aramark Corp., 2009 WL 1299842 (D.N.M. 2009)(Browning, J.).  The Tenth Circuit has also noted:

> It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, see Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452, 1462 (10th Cir. 1991); Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990); First City Bank v. Air Capitol Aircraft Sales, 820 F.2d 1127, 1133 (10th Cir. 1987), especially when the party filing the motion has no adequate explanation for the delay, Woolsey, 934 F.2d at 1462. Furthermore, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Las Vegas Ice, 893 F.2d at 1185.

Frank v. U.S. W., Inc., 3 F.3d at 1365-66.[7] The longer the delay, "the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Minter v. Prime Equip. Co., 451 F.3d at 1205 (citing Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004)). Undue delay occurs where the plaintiff's amendments "make the complaint 'a moving target.'" Minter v. Prime Equip. Co., 451 F.3d at 1206 (quoting Viernow v. Euripides Dev. Corp., 157 F.3d 785, 799-800 (10th Cir. 1998)). "[P]rejudice to the opposing party need not also be shown." Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d at 1185. "Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d at 1185 (quoting State Distribs., Inc. v. Glenmore Distilleries Co., 738 F.2d 405 (10th Cir. 1984)). Along the same vein, the court will deny amendment if the party learned of the facts upon which its proposed amendment is based and nevertheless unreasonably delayed in moving to amend its complaint. See Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994)(noting motion to amend filed "was not based on new evidence unavailable at the time of the original filing").

Refusing leave to amend is generally justified only upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. See Castleglen, Inc. v. Resolution

_____

[7]The Court notes that there is older authority in the Tenth Circuit that seems to be to the contrary. See R.E.B., Inc. v. Ralston Purina Co., 525 F.2d 749, 751 (10th Cir. 1975)("Lateness does not of itself justify the denial of the amendment."). Minter v. Prime Equipment Co. seems to clarify that the distinction is between "delay" and "undue delay." Minter v. Prime Equipment Co., 451 F.3d at 1205-06. Delay is undue "when the party filing the motion has no adequate explanation for the delay." Minter v. Prime Equipment Co., 451 F.3d at 1206.

Trust Corp., 984 F.2d 1571, 1585 (10th Cir. 1993)(citing Foman v. Davis, 371 U.S. at 182).

Again, the matter is left to the Court's discretion. See Frank v. U.S. W., Inc., 3 F.3d at 1365-66.

See Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver, 397 F.3d 1300, 1315 (10th

Cir. 2005)(quoting Frank v. U.S. West, Inc., 3 F.3d at 1365-66, and stating that resolving the

issue whether to allow a plaintiff to file a supplement to his complaint is "well within the

discretion of the district court").  "The . . . Tenth Circuit has emphasized that '[t]he purpose of

[rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its

merits rather than on procedural niceties.'"  B.T. ex rel. G.T. v. Santa Fe Pub. Schs., 2007 WL

1306814, at *2 (D.N.M. 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d

1196, 1204 (10th Cir. 2006)).  "Specifically, the . . . Tenth Circuit has determined that district

courts should grant leave to amend when doing so would yield a meritorious claim."  Burleson v.

ENMR-Plateau Tel. Co-op., 2005 WL 3664299, at *2 (D.N.M. 2005)(Browning, J.)(citing

Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001)).

## LAW REGARDING RULE 19

Parties meeting the criteria laid out in rule 19(a)(1) are required parties. If a required

party is not joined, then "the court must order that the person be made a party."

Fed. R. Civ. P. 19(a)(2).  If the required party cannot be joined, then a court must consider the

factors in rule 19(b) to determine whether it should dismiss the case or should allow the case to

proceed with the existing parties.

Earlier case law generally describes those parties who should be joined under rule 19(a)

as necessary parties, and those necessary parties whose absence requires that a case be dismissed

under rule 19(b) as indispensable parties, or necessary and indispensable parties.  The 2007

amendments to the rules changed the term necessary parties to required parties.  See Fed. R. Civ.

P. 19.  These amendments were stylistic only, however, and much of the case law interpreting rule 19 predates the amendments and refers to necessary and indispensable parties.  <u>See</u> Fed. R. Civ. P. 19 (Advisory Committee Notes 2007).

1. **Incomplete Relief.**

One basis on which a party may be a required, or necessary, party is if, "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A).  A court is able to afford complete relief when a party's absence "does not prevent the plaintiffs from receiving their requested . . . relief."  <u>Sac and Fox Nation of Missouri v. Norton</u>, 240 F.3d 1250, 1258 (10th Cir. 2001).  As <u>Moore's Federal Practice</u> explains, this provision "requires joinder when nonjoinder precludes the court from effecting relief not in some overall sense, but between *extant parties.*"  4 J. Moore & R. Freer, Moore's Federal Practice § 19.03[2][b], at 19-39 (3d ed. 2009)(emphasis in original).  "Properly interpreted, the Rule is not invoked simply because some absentee may cause future litigation. . . .  The fact that the absentee might later frustrate the outcome of the litigation does not by itself make the absentee necessary for complete relief."  4 <u>Moore's Federal Practice</u> § 19.03[2][b], at 19-39 to 19-41 (footnotes omitted).

Those cases discussing the complete-relief segment of rule 19(a) look at whether a plaintiff or other claimant can be granted complete relief without adding parties.  For example, in <u>Salt Lake Tribune Pub. Co., LLC v. AT & T Corp.</u>, 320 F.3d 1081 (10th Cir. 2003), the Tenth Circuit analyzed whether the district court could grant the plaintiff all the relief that it was seeking on its claims.  <u>See</u> 320 F.3d at 1097.  In <u>Associated Dry Goods Corp. v. Towers Financial Corp.</u>, 920 F.2d 1121 (2d Cir. 1990), the United States Court of Appeals for the Second Circuit held that an absent party was a necessary party to afford a counterclaimant

complete relief because the counter-defendant could not comply with the injunction that the counterclaimant sought without the consent of the absent party.  See 920 F.2d at 1124.  In Champagne v. City of Kansas City, 157 F.R.D. 66 (D. Kan. 1994)(Lungstrum, J.), a number of paramedics filed suit against the City of Kansas City, alleging overtime-pay violations.  See 157 F.R.D. at 67.  The City sought to join as plaintiffs other paramedics who had not sued.  See 157 F.R.D. at 67.  The district court held:

> Complete relief refers to relief as between the persons already parties to the action and not as between a present party and the absent party whose joinder is sought. The named plaintiffs in the present action would be able to obtain all the relief requested without the joinder of four additional paramedics. Defendant's assertion that all persons whose claims are identical to the plaintiffs should be joined is not within the meaning of complete relief.

Champagne v. City of Kansas City, 157 F.R.D. at 67 (citation omitted).

### 2. **Inconsistent Obligations.**

Another way in which a party can be a required or necessary party is if the "person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii).  This clause "compels joinder of an absentee to avoid inconsistent *obligations,* and not to avoid inconsistent adjudications.  It is not triggered by the possibility of a subsequent adjudication that may result in a judgment that is inconsistent as a matter of logic."  4 Moore's Federal Practice § 19.03[4][d], at 19-59 to 19-60 (emphasis in original)(footnotes omitted).  This understanding is reflected in the United States Court of Appeals for the First Circuit's description of the rule:

> "Inconsistent obligations" are not . . . the same as inconsistent adjudications or results.  Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same

incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum. Unlike a risk of inconsistent obligations, a risk that a defendant who has successfully defended against a party may be found liable to another party in a subsequent action arising from the same incident-i.e., a risk of inconsistent adjudications or results-does not necessitate joinder of all of the parties into one action pursuant to Fed. R. Civ. P. 19(a).

Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3 (1st Cir. 1998) (citations omitted).

The United States Court of Appeals for the Ninth Circuit has adopted the First Circuit's approach to rule 19(a)(1)(B)(ii). See Cachil Dehe Band of Wintun Indians of the Colusa Indian Community v. California, 547 F.3d 962, 976 (9th Cir. 2008)("Cachil"). Accordingly, the Ninth Circuit held that there was no risk of inconsistent obligations in a situation in which the State of California might have to adhere to one interpretation of a compact when dealing with particular Indian tribes, while following a different interpretation in its dealings with other tribes, because California could consistently deal with each tribe according to the different judgments. See Cachil, 547 F.3d at 976. Other circuits, as well as lower courts and leading treatises, have all taken the same approach. See, e.g., Boone v. General Motors Acceptance Corp., 682 F.2d 552, 554 (5th Cir. 1982)(holding that, where "multiple litigation might result . . . [but there is] little possibility of inconsistent obligations," rule 19(a) is not implicated); Field v. Volkswagenwerk AG, 626 F.2d 293, 301 (3d Cir. 1980)(same); Fisherman's Harvest, Inc. v. United States, 74 Fed. Cl. 681, 688-89 (Fed. Cl. 2006)(following Delgado v. Plaza Las Americas, Inc.); 4 Moore's Federal Practice § 19.03[4][d], at 19-59 to 19-61 (stating that inconsistent obligations occur only when a party cannot obey two conflicting order from different courts). While the Tenth Circuit has not devoted extended discussion to inconsistent obligations, it has given, as an example of inconsistent obligations, a hypothetical scenario in which a federal district court orders a defendant to transfer stock to the plaintiff while a state court orders the same defendant to

transfer the same stock to a different party who is not involved in the federal litigation. See Salt Lake Tribune Pub. Co., LLC v. AT & T Corp., 320 F.3d at 1098.

## LAW REGARDING RULE 20

Rule 20 addresses permissive parties. Joinder under rule 20 "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 558 F.2d 914, 917 (9th Cir. 1977)(citing Mosley v. General Motors Corp., 497 F.2d 1330 (8th Cir. 1974)). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966).

Rule 20 provides:

(a)     **Persons Who May Join or Be Joined.**

    (1)     ***Plaintiffs***. Persons may join in one action as plaintiffs if:

        (A)     they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

        (B)     any question of law or fact common to all plaintiffs will arise in the action.

    (2)     ***Defendants***. Persons -- as well as a vessel, cargo, or other property subject to admiralty process in rem -- may be joined in one action as defendants if:

        (A)     any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

        (B)     any question of law or fact common to all defendants will arise in the action.

(3) ***Extent of Relief***. Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

(b) **Protective Measures**. The court may issue orders -- including an order for separate trials -- to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party.

Fed. R. Civ. P. 20. Thus, rule 20(a) requires only (i) that the claims by or against the party to be joined arise from the same transaction, occurrence, or series of transactions or occurrences underlying the claims by or against the party it seeks to join; and (ii) the claims by or against the party to be joined share at least one question of law or fact with the claims by or against the party it seeks to join. See Fed. R. Civ. P. 20(a).

## ANALYSIS

The Court will dismiss Airswift Holdings, because Airswift Holdings is incorporated in the United Kingdom and there is no evidence that it directed any of its activities at New Mexico. Accordingly, it is not "at home" in New Mexico, and the harm alleged does not arise from any contacts Airswift Holdings has with New Mexico. Daimler AG v. Bauman, 571 U.S. at 137. Although Hernandez requests that the Court stay its personal-jurisdiction ruling until he can conduct jurisdictional discovery, the Court declines to grant that request, because it concludes that it is highly unlikely that discovery will uncover that Airswift Holdings has the requisite contacts with New Mexico. The Court also concludes that, at the time of removal, all Plaintiffs were diverse from all Defendants. Hernandez is a Texas citizen; Airswift Holdings is a United Kingdom Citizen; Chevron U.S.A. is a Pennsylvanian and Californian citizen; Grand Isle is a Louisiana citizen. Accordingly, the Court had diversity jurisdiction when the case was removed. The Court concludes, however, that Hernandez may amend the Complaint to add Swift

Technical -- a Texas citizen -- which destroys complete diversity. Based on the record the parties present, the Court discerns no bad faith from Hernandez in seeking to add Swift Technical. Hernandez did not appear to know that Swift Technical was a proper and viable Defendant until after the Notice of Removal was filed, and, within three weeks of learning that information, he filed the Motion to Amend. Accordingly, this situation satisfies 28 U.S.C. § 1447(e)'s joinder standards, so the Court will grant Hernandez' request to amend his Complaint. Because Hernandez has since filed the Amended Complaint with Swift Technical as a defendant, complete diversity has been destroyed, and the Court remands the case. See 28 U.S.C. § 1447(e).

I.      **AIRSWIFT HOLDINGS LACKS MINIMUM CONTACTS WITH NEW MEXICO.**

When issues arise in a removed case about personal jurisdiction and subject-matter jurisdiction, "there is no unyielding jurisdictional hierarchy." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578 (1999). "Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter, but there are circumstances in which a district court appropriately accords priority to a personal jurisdiction inquiry." Ruhrgas AG v. Marathon Oil Co., 526 U.S. at 578. For example, where subject-matter jurisdiction raises difficult, novel, or complex issues, while personal jurisdiction presents relatively straightforward issues, personal jurisdiction is appropriately resolved first. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. at 588; Gadlin v. Sybron Int'l Corp., 222 F.3d 797, 799 (10th Cir. 2000)("[A] court does not abuse its discretion if it addresses personal jurisdiction first in a case where alleged defects in subject matter jurisdiction raise difficult questions but the personal jurisdiction issue is straightforward."). Here, the personal jurisdiction question is relatively straightforward, so the Court addresses it first.

To assert personal jurisdiction, the threshold constitutional question is whether the party has minimum contacts with the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. at 473-76. This question can be answered in the affirmative in one of two ways, providing a court with either general or specific personal jurisdiction. Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d at 1532-33. The Court examines general personal jurisdiction first.

The test for general personal jurisdiction turns on whether the defendant is "at home" within the forum state. Daimler AG v. Bauman, 571 U.S. at 137. For corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction." Daimler AG v. Bauman, 571 U.S. at 137 (quoting Goodyear, 564 U.S. at 924). Airswift Holdings is a corporation, incorporated in the United Kingdom. See Searle Decl. ¶ 2, at 1. Its corporate headquarters is located in Manchester, England, United Kingdom. See Searle Decl. ¶ 3, at 1. Airswift Holdings does not own any real or personal property in New Mexico, does not pay New Mexico taxes, and does not have a bank account in New Mexico. See Searle Decl. ¶¶ 8-10, at 2. Airswift Holdings, thus, does not have an "affiliation[]" with New Mexico "so continuous and systematic as to render [it] essentially at home" in New Mexico. Daimler AG v. Bauman, 571 U.S. at 138. Accordingly, Airswift Holdings does not have minimum contacts with New Mexico via the general personal jurisdiction avenue.

Specific personal jurisdiction exists if "'the suit' 'aris[es] out of or relat[es] to the defendant's contacts with the *forum*.'" Bristol-Myers, 137 S. Ct. at 1780 (quoting Daimler AG v. Bauman, 571 U.S. at 127)(emphasis in Bristol-Myers). See Bristol-Myers, 137 S. Ct. at 1781 ("[A] defendant's general connections with the forum are not enough."). The inquiry is a two part test: "[F]irst . . . the out-of-state defendant must have 'purposefully directed' its activities at residents in the forum state, and second, . . . the plaintiff's injuries must 'arise out of' defendant's

forum-related activities." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1071. In the tort context, a defendant has "purposefully directed" his activities at New Mexico or its residents when he or she has: (i) taken intentional action; (ii) the action was "expressly aimed" at New Mexico; and (iii) the action was taken with the knowledge that "the brunt of th[e] injury" would be felt in New Mexico. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1072 (quoting Calder v. Jones, 465 U.S. at 789-90).

Here, Airswift Holdings has not purposefully directed any of its activities at the New Mexico plant at issue or even at New Mexico in general. According to Peter Searle, one of Airswift Holdings' directors, "Airswift has not contracted with Chevron U.S.A. . . . or Grand Isle . . . to provide, and has not provided, any services, personnel, materials, or goods for any facility in the State of New Mexico, including Chevron's Buckeye $CO_2$ plant near Lovington." Searle Decl. ¶ 5, at 1-2. "No Airswift employees or contractors have performed any services at Chevron's Buckeye $CO_2$ plant near Lovington . . . nor were any Airswift employees or contractors present at Chevron's Buckeye $CO_2$ plant near Lovington . . . in December 2015." Searle Decl. ¶ 6, at 2. Moreover, "Airswift does not do any business in, or provide any services or materials to any entity in the State of New Mexico." Searle Decl. ¶ 7, at 2. The Court concludes, accordingly, that Airswift Holdings does not have minimum contacts via specific personal jurisdiction.

Hernandez asks the Court, however, to stay its ruling pending jurisdictional discovery. See Motion to Stay at 1. His basis for the request is an argument that Airswift Holdings is related, in some way, to Swift Technical, which has minimum contacts with New Mexico. See Motion to Stay at 1, 5. His argument stems from the Notice of Denial, which states that it denies Hernandez worker compensation benefits, because Hernandez "was not an employee of either

Swift Technical Services LLC or Airswift Holdings Limited on the alleged date of injury." Notice of Denial at 1.

The Court has discretion to grant or deny jurisdictional discovery. See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort, 629 F.3d 1173, 1188-89 (10th Cir. 2010)("Breakthrough"). A court abuses its discretion in denying discovery "if the denial results in prejudice to the litigant." Breakthrough, 629 F.3d at 1189. A district court does not abuse its discretion when "there is a very low probability that the lack of discovery affected the outcome of the case." Bell Helicopter Textron, Inc. v. Heliquest Int'l., Ltd., 385 F.3d 1291, 1299 (10th Cir. 2004). See Grynberg v. Ivanhoe Energy, Inc., 490 F. App'x 86, 103 (10th Cir. 2012)(unpublished). The party seeking jurisdictional discovery bears the burden that they are entitled to that discovery. See Breakthrough, 629 F.3d at 1189, n.11.

Hernandez' argument touches on a strand of specific personal jurisdiction, which, in rare circumstances, allows a court to impute one company's contacts upon another. Specifically, "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." Daimler AG v. Bauman, 571 U.S. at 135, n.13. Thus, although Airswift Holdings may lack minimum contacts, if Swift Technical is Airswift Holdings' agent and Airswift Holdings directed Swift Technical to act in New Mexico, Swift Technical's contacts may be imputed onto Swift Holdings. See Daimler AG v. Bauman, 571 U.S. at 135 n.13. Demonstrating that an entity is acting as another entity's agent, however, is not a simple feat. See Home-Stake Prod. Co. v. Talon Petroleum, C.A., 907 F.2d 1012, 1020 (10th Cir. 1990)("When one defendant completely controls another, the latter's contacts with the forum may fairly be imputed or attributed to the former."); Quarles v. Fuqua Indus., Inc., 504 F.2d 1358, 1364 (10th Cir. 1974)(concluding that, even when a corporation owns "a controlling

influence" of a second corporation's stock, such control is insufficient to "make the second corporation an agent of the first"); In re Santa Fe Natural Tobacco Co. Mktg. & Sales Practices and Prods. Liability Litig., 288 F. Supp. 3d 1087, 1214-15 (D.N.M. 2017)(Browning, J.)(concluding that a subsidiary's contacts could not be imputed to the parent even where they shared some board members and assets, because there was insufficient evidence to rule that the parent controlled the subsidiary). See also Pro Axess, Inc. v. Orlux Distrib., Inc., 428 F.3d 1270, 1278 (10th Cir. 2005)(concluding that a subsidiary's contacts may be imputed on the parent "provided the parent exercises sufficient control over the subsidiary").

Here, Hernandez' request for jurisdictional discovery is premised on his representation that they are "related entit[ies]" and/or Swift Technical is a subsidiary of Airswift Holdings. Motion to Stay at 5. See Tr. at 18:2 (Isaac). A related entity relationship is insufficient to impute contacts. See Home-Stake Prod. Co. v. Talon Petroleum, C.A., 907 F.2d at 1020; Good v. Fuji Fire & Marine, Inc. Co., Ltd., 271 F. App'x 756, 759 (10th Cir. 2008)(unpublished)(holding that "separately-incorporated companies" do not typically impute contacts). Even if the two companies are related as parent/subsidiary, the underlying evidence that Hernandez presents does not suggest that Airswift Holdings controls Swift Technical. All that evidence shows is that Hernandez was denied worker's compensation for not being a Swift Technical or Airswift Holdings employee. See Notice of Denial at 1. Without an additional proffer or evidence suggesting a more vigorous principal-agent relationship, "there is a very low probability" that Hernandez can establish the requisite contacts even with discovery. Bell Helicopter Textron, Inc. v. Heliquest Int'l., Ltd., 385 F.3d at 1299. Accordingly, the Court denies the Motion to Stay, and grants the Motion. The Court will dismiss Hernandez' claims against Swift Holdings for lack of personal jurisdiction.

## II.     COMPLETE DIVERSITY EXISTED AT THE TIME OF REMOVAL.

Hernandez asserts that the Court lacks subject-matter jurisdiction, because the Defendants have failed to meet their burden of demonstrating diversity of citizenship at the time of removal.  See Motion to Remand at 1.  The preponderance of the evidence demonstrates, however, that the defendants were diverse from Hernandez at the time of removal.  See Middleton v. Stephenson, 749 F.3d 1197, 1200 (10th Cir. 2014)("[A] party invoking diversity bears the burden of proving its existence by a preponderance of the evidence.").[8]  For diversity purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1)).  See Management Nominees, Inc. v. Alderney Investments, LLC, 813 F.3d 1321, 1324 (10th Cir. 2016).

Airswift Holdings is a corporation "incorporated in the United Kingdom" with a corporate headquarters "in Manchester, England, the United Kingdom."  Searle Decl. ¶¶ 2-3, at 1.  Accordingly, Airswift Holdings is a United Kingdom citizen.   Chevron U.S.A. is incorporated in Pennsylvania, with a principal place of business in San Ramon, California.  See Complaint ¶ 2, at 1; Notice of Removal ¶ 11, at 3.[9]  Thus, Chevron U.S.A. is a Pennsylvania and California citizen.  Grand Isle is incorporated in Louisiana and with a corporate headquarters in

---

[8]That Airswift Holdings does not attach evidence to its Notice of Removal to demonstrate diversity is of no moment, because, as the Court has stated many times, "a district court may consider evidence presented to it after a notice of removal has been filed."  Federal National Mortgage Assoc. v. Milasinovich, 161 F. Supp. 3d 981, 998 (D.N.M. 2016)(Browning, J.).  See, e.g., Thompson v. Intel Corp., 2012 WL 3860748, at *14 (D.N.M. Aug. 27, 2012)(Browning, J.). See also Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. at 552-54 (granting certiorari on the question "[w]hether a defendant seeking removal to federal court is required to include evidence supporting federal jurisdiction in the notice of removal" and concluding that evidence  is required, at least as to the amount-in-controversy requirement, "only when the plaintiff contests, or the court questions, the defendant's allegation" in the notice of removal).

[9]Hernandez does not contest Chevron U.S.A.'s citizenship.

Galliano, Louisiana. See Declaration of Eric Callais ¶¶ 2-3, at 1 (dated December 12, 2017), filed December 14, 2017 (Doc. 23-4)("Callais Decl."); email from Dave Bunting to Cody Vasut and Jack Burton at 1 (dated October 17, 2017), filed December 14, 2017 (Doc. 23-2)("Grand Isle email"); Tr. at 39:19 (Bunting)..

Hernandez contests that Grand Isle's principal place of business is in Louisiana by submitting a New Mexico Secretary of State Internet Search, which states that Grand Isle's "Principal Office Outside of New Mexico" is in "Odessa, TX." SOS Search at 1. A principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 559 U.S. 77, 93 (2010). See Carrillo v. MCS Indus., Inc., 2012 WL 5378300, at *14-15 (D.N.M. Oct. 15, 2012)(Browning, J.). Normally, the principal place of business is the corporation's headquarters "provided that the headquarters is the actual center of direction, control, and coordination." Hertz Corp. v. Friend, 559 U.S. at 93. Although the SOS Search lists Odessa, Texas as the "Principal Office Outside of New Mexico," it also details that Grand Isle's President, Vice President, Chief Financial Officer and Director have an office address in Galliano, Louisiana, which matches the office address of the place of incorporation. SOS Search at 1-2. Because all of the principal officers work in Galliano, Louisiana, and because Grand Isle's director, Callais, affirmed that Grand Isle "directs and controls its business operations in New Mexico and Texas from its corporate headquarters in Galliano, Louisiana," and that none of Grand Isle's "corporate officers works in the State of New Mexico or the State of Texas," the Court concludes that Grand Isle has shown, by a preponderance of the evidence, jurisdictional facts, which demonstrate that its principal place of

business is in Louisiana.  Callais Decl. ¶ 3, at 1.[10]  Accordingly, the Court concludes that Grand

Isle is a Louisiana citizen only.  Because none of the Defendants are Texas citizens, they are

diverse from Hernandez, who is a Texas citizen.  Accordingly, the Court denies the Motion to

Remand.

## III.    HERNANDEZ MAY AMEND HIS COMPLAINT TO ADD SWIFT TECHNICAL AND THE COURT WILL REMAND THE CASE.

Hernandez seeks to add Swift Technical as a Defendant, which, if granted, would destroy

complete diversity, because Swift Technical is a Texas citizen.  See Motion to Amend at 1.

Accordingly, Hernandez also seeks remand to state court under 28 U.S.C. § 1447(e).  See Motion

to Amend at 1.  Section 1447(e) provides: "If after removal the plaintiff seeks to join additional

defendants whose joinder would destroy subject matter jurisdiction; the court may deny joinder,

or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e).

In dicta, the Tenth Circuit created the standard a district court should apply when

considering a party's joinder under 28 U.S.C. § 1447(e).  See McPhail v. Deere & Co., 529 F.3d

at 951-52.[11]  See also Culver v. Lithia Motors, Inc., 2016 7426587, at *5 (D.N.M. May 12,

---

[10]At the hearing, Grand Isle represented that its corporation commission "shows the principal place of business as Galliano, Louisiana" and that the Odessa, Texas listing in the SOS search must have been "an error."  Tr. at 45:1-13 (Bunting).

[11]The Court concludes that the Tenth Circuit's standard on this issue is dicta, because, after creating the standard, it notes "[w]e have no occasion here to apply these principles to the district court's decision, because [the plaintiff] never attempted to amend her complaint" to join a non-diverse party.  McPhail v. Deere & Co., 529 F.3d at 952.  No other Tenth Circuit case has adopted this standard.  Despite being dicta and the lack of Tenth Circuit affirmation, most district courts in the Tenth Circuit have applied the rule as law.  See, e.g., Romero v. Hartford Casualty Ins. Co., 2017 WL8220447, at *4 (Aug. 3, 2017)(Brack, J.); Altizer v. Kia Motors America, Inc., 2014 WL 3587806, at *2 (W.D. Okla. July 21, 2014)(Heaton, J.) Pacely v. Lockett, 2013 WL 12136690, at * 4 (D.N.M. March 30, 2013)(Armijo, C.J.).  The Court flags the standard as dicta, because, as it notes infra, there is a tension between the standard articulated and rule 19's plain language.

2016)(Yarbrough, M.J.)(concluding that <u>McPhail v. Deere & Co.</u>'s standard is dicta and declining to follow it on those grounds), <u>adopted by</u> 2016 WL 7447552, at \*1 (D.N.M. July 19, 2016)(Armijo, C.J.). Should a plaintiff, under 28 U.S.C. § 1447(e) seek to join additional defendants after removal who would destroy subject matter jurisdiction, a "court must determine whether the party to be joined is indispensable." <u>McPhail v. Deere & Co.</u>, 529 F.3d at 951. "If so, Rule 19 requires the court either to join the party, in which case remand is necessary under § 1447(e), or to deny joiner, in which case Rule 19(b) also requires the action to be dismissed." 529 F.3d at 951. "If the defendant is not indispensable, Rule 20(a)(2) permits joinder at the discretion of the district court." 529 F.3d at 951-52. Under rule 20(a)(2), "the district court typically considers several factors," including "whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed," and whether the amendment "was offered in good faith." 529 F.3d at 952. "If the district court determines that joinder is appropriate, § 1447(e) requires remand to state court. If the district court decides otherwise, it may deny joinder." 529 F.3d at 952.

In other words, under <u>McPhail v. Deere & Co.</u>, 28 U.S.C. § 1447(e) requires a court to first look to rule 19 to determine whether the defendant to be added is a required and an indispensable[12] party, and, if the defendant is not a required and an indispensable party, look to

---

[12]In <u>McPhail v. Deere & Co.</u>, the Tenth Circuit uses only the term "indispensable" party when it refers to rule 19 parties, but rule 19 governs both required and indispensable parties. Should a party satisfy rule 19(a), it is a required party -- which is also sometimes confusingly referred to as a necessary party. <u>See Northern Arapaho Tribe v. Harnsberger</u>, 697 F.3d 1272, 1278 n.3 (10th Cir. 2012). If a party is required, then rule 19(b) determines whether that required party is also indispensable. <u>See Northern Arapaho Tribe v. Harnsberger</u>, 697 F.3d at 1278 n.3. A party that is not required cannot be an indispensable party, but a required party is not necessarily an indispensable party. <u>See</u> Fed. R. Civ. P. 19(a)-(b). The 2007 amendments deleted the term "indispensable" party from rule 19(b)'s text, but an indispensable party "is still used to denote a required party in whose absence the action cannot proceed." <u>Northern Arapaho</u>

- 66 -

2016)(Yarbrough, M.J.)(concluding that <u>McPhail v. Deere & Co.</u>'s standard is dicta and declining to follow it on those grounds), <u>adopted by</u> 2016 WL 7447552, at \*1 (D.N.M. July 19, 2016)(Armijo, C.J.). Should a plaintiff, under 28 U.S.C. § 1447(e) seek to join additional defendants after removal who would destroy subject matter jurisdiction, a "court must determine whether the party to be joined is indispensable." <u>McPhail v. Deere & Co.</u>, 529 F.3d at 951. "If so, Rule 19 requires the court either to join the party, in which case remand is necessary under § 1447(e), or to deny joiner, in which case Rule 19(b) also requires the action to be dismissed." 529 F.3d at 951. "If the defendant is not indispensable, Rule 20(a)(2) permits joinder at the discretion of the district court." 529 F.3d at 951-52. Under rule 20(a)(2), "the district court typically considers several factors," including "whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed," and whether the amendment "was offered in good faith." 529 F.3d at 952. "If the district court determines that joinder is appropriate, § 1447(e) requires remand to state court. If the district court decides otherwise, it may deny joinder." 529 F.3d at 952.

In other words, under <u>McPhail v. Deere & Co.</u>, 28 U.S.C. § 1447(e) requires a court to first look to rule 19 to determine whether the defendant to be added is a required and an indispensable[12] party, and, if the defendant is not a required and an indispensable party, look to

---

[12]In <u>McPhail v. Deere & Co.</u>, the Tenth Circuit uses only the term "indispensable" party when it refers to rule 19 parties, but rule 19 governs both required and indispensable parties. Should a party satisfy rule 19(a), it is a required party -- which is also sometimes confusingly referred to as a necessary party. <u>See Northern Arapaho Tribe v. Harnsberger</u>, 697 F.3d 1272, 1278 n.3 (10th Cir. 2012). If a party is required, then rule 19(b) determines whether that required party is also indispensable. <u>See Northern Arapaho Tribe v. Harnsberger</u>, 697 F.3d at 1278 n.3. A party that is not required cannot be an indispensable party, but a required party is not necessarily an indispensable party. <u>See</u> Fed. R. Civ. P. 19(a)-(b). The 2007 amendments deleted the term "indispensable" party from rule 19(b)'s text, but an indispensable party "is still used to denote a required party in whose absence the action cannot proceed." <u>Northern Arapaho</u>

rule 20's discretionary factors to determine whether joinder is proper.  See 529 F.3d at 951-52.

The problem that the Court sees with the Tenth Circuit's standard is that, under rule 19, a

defendant to be added after removal who would destroy subject matter jurisdiction is never a

required or indispensable party.[13]  Rule 19 states:

> **(a)**    **Persons Required to be joined if Feasible.**
>
> (1)    ***Required Party.***  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . .

Fed. R. Civ. P. 19(a)(1)(emphasis added).  Thus, McPhail v. Deere & Co.'s standard results in

unnecessary analysis.  Should a district court follow McPhail v. Deere & Co. it would look first

to rule 19, but it could, automatically, move onto rule 20's discretionary factors, because rule 19

does not apply to a party that § 1447(e) governs.  Perhaps the Tenth Circuit meant that a district

court should disregard whether the party is required or indispensable, but nonetheless consider

the factors underlying rule 19, which determine whether a party is required or indispensable

before considering rule 20's factors.  McPhail v. Deere & Co.'s language does not, however,

suggest that interpretation.  The Tenth Circuit does not state that rule 19's considerations are

factors; rather, it states that, when considering joinder, rule 19 compels a court to determine first

"whether the party sought to be joined is indispensable."  McPhail v. Deere & Co., 529 F.3d at

951.[14]  28 U.S.C. § 1447(e)'s and rule 19's language also suggests that considering rule 19's

_____

Tribe v. Harnsberger, 697 F.3d at 1278 n.3.  See Fed. R. Civ. P. 19 (2007 advisory committee notes).

[13]As noted earlier, a party is indispensable only if the party is also required.  See Fed. R. Civ. P. 19(a)-(b); supra n.12.

[14]Perhaps rule 19 does compel a court to consider it first, but, when amendment and joinder is sought under 28 U.S.C. § 1447(e), the answer is straightforward -- under rule 19, that party is not required or indispensable.

underlying factors is inappropriate. Rule 19 states that it does not govern parties to be added that would destroy subject-matter jurisdiction, whereas 28 U.S.C. § 1447(e) says that it does govern such parties. Thus, grafting rule 19's considerations onto 28 U.S.C. § 1447(e) flouts rule 19's plain language. See Knight v. C.I.R., 552 U.S. 181, 187 (2008)(stating that, as a canon of construction, "[w]e start, as always, with the language of the statute").

The Court notes that the Courts of Appeals appear to be split on this issue. The United States Court of Appeals for the Fourth Circuit, for example, expressly eschews a rule 19 analysis: "Under Section 1447(e), the actual decision on whether or not to permit joinder . . . is committed to the sound discretion of the district court; thus, this decision is not controlled by a Rule 19 analysis." Mayes v. Rapoport, 198 F.3d 457, 462 (4th Cir. 1999)(King, J.)(citing 14C Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3739, at 445 (3d ed. 1998)("Wright & Miller")). See Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 759 (7th Cir. 2009)(not requiring a rule 19 analysis); Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc., 654 F. App'x 218, 221 (6th Cir. 2016)(unpublished).[15] See also Lisa Combs Foster, Section 1447(e)'s Discretionary Joinder and Remand: Speedy Justice or Docket Cleaning, 1990 Duke L.J. 118, 121 ("Significantly, section 1447(e) does not require the court, in considering whether joinder of a nondiverse party should be permitted to deprive the court of jurisdiction, to determine whether the party is 'indispensable' to the action according to Federal Rule 19(b)."). Wright & Miller follow the Fourth and Seventh Circuits,

---

[15]The Court notes that the United States Court of Appeals for the Fifth Circuit, in the past, has indicated that rule 19 and Section 1447(e) have some interplay, but, in a more recent decision, although not disavowing its previous holding, has not required a rule 19 analysis. Compare Moore v. Manns, 732 F.3d 454, 456 (5th Cir. 2013) with Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987).

noting that district courts usually balance several equitable factors when conducting a § 1447(e) analysis. See Wright & Miller, supra § 3739.1.

On the other hand, the United States Court of Appeals for the First Circuit has concluded that rule 19 has a role to play should a plaintiff correctly invoke 28 U.S.C. § 1447(e):

> If the defendant is indispensable, the district court's choices are limited to denying joinder and dismissing the action pursuant to Fed. R. Civ. P. 19, or else allowing joinder and remanding the case to the state court pursuant to § 1447(e). . . . If, on the other hand, the defendant is dispensable, the district court has the options, pursuant to § 1447(e), of denying joinder and continuing its jurisdiction over the case, or permitting joinder and remanding the case to state court.

Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668, 675 (1st Cir. 1994). The United States Court of Appeals for the Eighth Circuit blazes a path similar to the Tenth Circuit's dicta in McPhail v. Deere & Co., stating that rule 19 ultimately governs joinder under Section 1447(e):

> When an action is removed from state to federal court, and "after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Joinder would be required if the plaintiff satisfied Fed. R. Civ. P. 19 by showing that the new parties are necessary and indispensable to a full resolution of the case.

Bailey v. Bayer CropScience L.P., 563 F.3d 302, 307-08 (8th Cir. 2009). In their holdings, however, neither the First nor Eighth Circuits consider rule 19's plain language, which cuts out parties that § 1447(e) governs.

The Court concludes that the Fourth and Seventh Circuits have it right. Based on rule 19's & § 1447(e)'s plain language, a district court does not need to consider whether a party is required or indispensable before granting or denying joinder under § 1447(e). The Court therefore would move directly to rule 20's equitable factors here to determine whether Hernandez may amend his Complaint to add Swift Technical.

Nevertheless, were the Court to follow <u>McPhail v. Deere & Co.</u>'s dicta, the Court would conclude that Swift Technical is not a required or indispensable party.[16]  Rule 19(a) states that a person must be joined if:

> (A)     in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)     that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i)     as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii)     leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  A court is able to afford complete relief when a party's absence "does not prevent the plaintiffs from receiving their requested . . . relief."  <u>Sac and Fox Nation of Missouri v. Norton</u>, 240 F.3d at 1258.  Here, Hernandez requests damages for the injuries he sustained as a result of negligence.  <u>See</u> Complaint ¶¶ 45-46, at 11-12.  In his proposed Plaintiff's First Amended Complaint for Personal Injuries, filed November 30, 2017 (Doc. 18)("Proposed Amended Complaint"), Swift Technical appears as a joint tortfeasor with the other Defendants, purportedly liable for negligence resulting in the same harms to Hernandez.  <u>See</u> Proposed Amended Complaint ¶¶ 28-33, at 5-7.  Under rule 19, "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."  <u>Temple v. Synthes Corp., Ltd.</u>, 498 U.S. 5, 7 (1990)(per curiam).  <u>See</u> Fed. R. Civ. P.

---

[16]Thus, whether the Court follows <u>McPhail v. Deere & Co.</u>'s dicta is not outcome determinative, as rule 20's factors ultimately resolve the issue.  In the following analysis, the Court construes <u>McPhail v. Deere & Co.</u>'s  rule 19 discussion as a directive to treat rule 19's considerations as factors.  If the Court were to treat the case as a directive to determine whether Swift Technical is a required or indispensable party, the analysis would be straightforward; Swift Technical will "deprive the court of subject-matter jurisdiction," so Swift Technical is not a required or indispensable party.  Fed. R. Civ. 19(a)(1).

19 (advisory committee notes 1966)("[A] tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability. Joinder of these tortfeasors continues to be regulated by Rule 20."); <u>Radian Asset Assur., Inc. v. College of the Christian Brothers of New Mexico</u>, 2010 WL 965517, at *8 (D.N.M. Feb. 11, 2010)(Browning, J.)("[T]he Court is unaware of any authority that says that a joint tortfeasor is a necessary party under rule 19."). Hernandez argues that he cannot be afforded complete relief without Swift Technical, because of "New Mexico's strict comparative negligence rules," Reply at 7, but that argument goes to damage recovery and not whether complete relief can be afforded. Indeed, should comparative negligence rules require joinder, all joint tortfeasors would be required parties, which is not the rule.

Hernandez also argues that, should the Court not join Swift Technical, Swift Technical will be impaired in protecting its interest in the litigation. <u>See</u> Reply at 8; Fed. R. Civ. P. 19(a)(1)(B)(i). Hernandez' argument overlooks that, if Swift Technical is not a party, Swift Technical has no interest in the litigation. Should Hernandez secure a judgment against Chevron U.S.A., he will not be able to enforce that judgment against Swift Technical, absent some privity relationship not yet apparent which would give that judgment preclusive effect against Swift Technical. <u>See</u> 4 Moore's Federal Practice § 19.03[3d], at 19-53 to 19-54 (3d ed. 2018).

Finally, Hernandez argues that Swift Technical is a required party for being subject to inconsistent obligations, specifically, that Swift Technical would be subject to subpoenas in federal court while also litigating in state court. <u>See</u> Reply at 8. That argument misconstrues the breadth of rule 19's inconsistent obligation's standard, which is narrow. <u>See</u> <u>Wheeler Peak, LLC v. L.C.I.2, Inc.</u>, 2009 WL 2982817, at *11 (D.N.M. Aug. 15, 2009)(Browning, J.). As the Court

has articulated previously, "[i]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." Wheeler Peak, LLC v. L.C.I.2, Inc., 2009 WL 2982817, at *11. See Salt Lake Tribune Pub. Co., LLC v. AT&T Corp., 320 F.3d 1081, 1098 (10th Cir. 2003). At bottom, "[r]ule 19(a)(1)(B)(ii) is concerned with the more fundamental clash of court orders that occurs when" a party "cannot obey" two orders "simultaneously -- such as being ordered to give the same property to two different people." Wheeler Peak, LLC v. L.C.I.2, Inc., 2009 WL 2982817, at *12. Subpoena obligations would not create such a clash, because parties often are required to submit to discovery obligations in different courts. Rule 19's inconsistent obligations standard is not designed to shelter parties from the rigors of litigating in several forums; rather, it is designed to protect a party from serving conflicting masters. See Wheeler Peak, LLC v. L.C.I.2, Inc., 2009 WL 2982817, at *12. Accordingly, Swift Technical is not a required or an indispensable party.

Thus, in deciding whether to allow amendment and joinder, the Court turns to rule 20's discretionary factors, including, "whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed, [and whether it] was offered in good faith." McPhail v. Deere & Co., 529 F.3d at 952. A motion to amend, however, "is subject to denial" when "the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint." State Distrib., Inc. v. Glenmore Distilleries Co., 738 F.2d 405, 416 (10th Cir. 1984). See Eckert v. Dougherty, 658 F. App'x 401, 410 (10th Cir. 2016)(unpublished). For the first factor, Airswift Holdings and Chevron U.S.A. admit that there is some prejudice no matter what the Court decides: "If joinder is denied, Plaintiff would suffer some prejudice in having to litigate its claims in state court against Swift in a separate action, but if joinder is granted, Defendants would suffer prejudice in

losing their chosen federal forum." Airswift Holdings' Response to Motion to Amend at 7. <u>See</u> Chevron U.S.A. Response to Motion to Amend at 1. Their main argument, accordingly, turns on the notion that Hernandez "inexplicably" delayed amendment and offers the amendment now only so that he can defeat federal jurisdiction. Airswift Holdings' Response to Motion to Amend at 7. <u>See</u> Chevron U.S.A. Response to Motion to Amend at 1. According to Airswift Holdings and Chevron U.S.A., Hernandez knew that Swift Technical was a potential defendant "at the time of his injury," which was December 3, 2015, and thus, his Motion to Amend dated almost two years later must be sought only to defeat federal jurisdiction. Airswift Holdings' Response to Motion to Amend at 7 (citing Proposed Amended Complaint ¶ 8, at 3). <u>See</u> Chevron U.S.A. Response to Motion to Amend at 1.

The Court, however, disagrees that Hernandez knew or should have known -- at least not until very recently -- that Swift Technical was a viable defendant. Based off of Hernandez' representations, he believed that Airswift Holdings was the proper party, until November 13, 2017, when he learned through the Notice of Denial that there was another entity, Swift Technical, that could have been involved. <u>See</u> Reply at 10. Although the injury occurred on December 3, 2015, it is not apparent that Hernandez should have known that Swift Technical was a viable and proper defendant in 2015, because of a merger between the date of injury and the date of this lawsuit that altered the company contracting with Chevron U.S.A.

> [B]etween plaintiff's injury and filing of this lawsuit . . . Airs Energy, which is not in the lawsuit, and Swift Worldwide Resources merged. It was our understanding that Swift Worldwide Resources was the entity that contracted with Chevron to provide oilfield personnel and services. But because of that merger, we added Airswift, the merged entity, [as a party, but] unbeknownst to us . . . there was another subsidiary of both these other entities called Swift Technical Services.

Tr. at 17:19-18:4 (Isaac). Given this corporate history, the Court cannot conclude that Hernandez should have known Swift Technical was a proper defendant on the date of his injury. As the Court noted at the hearing, when a plaintiff's attorney initiates a case, oftentimes documents and information are thrust unceremoniously into that lawyer's lap. See Tr. at 42:17-25 (Court). The attorney has to make many judgment calls in a short time based off of that imperfect information stream. See Tr. at 42:17-25 (Court). The Court does not "fault the plaintiff, much, if any, for the way he's handled the motions here." Tr. at 42:24-43:1 (Court).

Airswift Holdings and Chevron U.S.A. next contend that, even if Hernandez did not know of Swift Technical around the time he was injured, he must have known of Swift Technical on October 26, 2017, when he reported an on the job injury for workers compensation benefits. See Airswift Holdings' Response to Motion to Amend at 7 (citing Notice of Denial); Chevron U.S.A. Response to Motion to Amend at 1. At the outset, the Court concludes that, even if Hernandez knew that Swift Technical was a viable defendant on October 26, 2017, there is no undue delay in his request to add Swift Technical a little more than a month later on November 30, 2017. The Motion to Amend was filed very early on in the case, before even the Magistrate Judge had entered a scheduling order,[17] which usually sets a rule 15(a) deadline to amend. See, e.g., Harjo v. City of Albuquerque, Scheduling Order, No. 16-1113, filed January 11, 2017 (Doc. 25); Bayview Loan Servicing, LLC v. Boland, 2008 WL 4059856, at *2 (D. Colo. Aug. 29, 2008)(Mix, M.J.)(concluding that no undue delay existed when the Plaintiff "moved to amend . . . within the deadline to amend set forth in the Scheduling Order"). See also Ali v. Dinwiddie, 291 F. App'x 164, 167 (10th Cir. 2008)(unpublished)(concluding that a district court abused its discretion for holding that there was undue delay when a plaintiff moved to amend his

---

[17]There is still no scheduling order. See Tr. at 8:10-11 (Isaac). According to the parties, the Magistrate Judge is waiting for the Court to rule on these motions. See Tr. at 8:11-13 (Isaac).

complaint twenty days after learning of additional evidence prompting the amendment). Accordingly, the Court concludes there is no undue delay.

The thrust of Airswift Holdings' and Chevron U.S.A.'s argument, however, is not that there is undue delay from Hernandez' October 26, 2017, knowledge, but that his knowledge predates the Notice of Removal, suggesting that Hernandez sought to amend only to destroy diversity jurisdiction. See Airswift Holdings' Response to Motion to Amend at 7-8; Chevron U.S.A. Response to Motion to Amend at 1. The evidence upon which Airswift Holdings and Chevron U.S.A. relies to assert that argument, however, does not demonstrate that Hernandez had knowledge of Swift Technical on October 26, 2017. See Notice of Denial at 1. To start, the Notice of Denial is dated November 8, 2017 -- eight days after removal. See Notice of Denial at 1. To be sure, it states that, "[o]n 10/26/2017, we received notice that you reported an on the job injury," but it does not detail any information that is in the notice Hernandez sent. Notice of Denial at 1. The record does not contain Hernandez' request for workers compensation. Hernandez' initial request for worker's compensation does not need to and may not have listed Swift Technical as a party responsible for his injury. Indeed, the Notice of Denial reflects that there may have been some ambiguity in Hernandez' request, because the Notice of Denial details that it investigated both Airswift Holdings and Swift Technical as potential employers. See Notice of Denial at 1. For his part, Hernandez contends that he "was not aware of Swift Technical" as a viable defendant until after receiving the Notice of Denial on "November 13, 2017." Reply at 10. Rather, until that date, he, understandably, believed that Airswift Holdings -- an entity related to Swift Technical -- was the proper party. See Reply at 10. The ambiguity in the Notice of Denial already mentioned supports Hernandez' representation. It is plausible that Hernandez listed Airswift Holdings in his request for employment compensation, and it was

only when the insurance carrier investigated the claim did that carrier realize that Swift Technical may have been an operative party.

The case's procedural history also supports Hernandez' representation that he thought Airswift Holdings was the proper party until he received the Notice of Denial.   In late September, 2017, Hernandez names Airswift Holdings in his Complaint.   <u>See</u> Complaint ¶ 3, at 1-2.   It is not until November 8, 2017 that Airswift Holdings responds by moving to dismiss for lack of personal jurisdiction.   <u>See</u> Motion at 1.   About three weeks later, and a little over two weeks after Hernandez receives the Notice of Denial, Hernandez filed his Motion to Amend to add Swift Technical.   <u>See</u> Complaint ¶ 3, at 1-2; Motion at 1; Motion to Amend at 1.   Given that history and the Notice of Denial, the Court concludes that there is insufficient evidence to conclude that Hernandez sought to amend to destroy the Court's jurisdiction.   Instead, the evidence suggests that, as Hernandez learned new information about the suit's proper parties, he appropriately and timely sought to amend the Complaint.

Thus, on balance, the Court concludes that the rule 20 factors favor allowing Hernandez to amend his complaint to add a party.   <u>See</u> <u>Lane v. Page</u>, 2011 WL 13076781, at *14 (D.N.M. Jan. 10, 2011)(Browning, J.)(recognizing rule 20 as a "liberal joinder standard").   Hernandez' request to amend was not unduly delayed and it was made in good faith.   Because the amendment and joinder is proper, diversity is destroyed and the Court must "remand the action to the State Court."   28 U.S.C. § 1447(e).   <u>See</u> Wright & Miller, <u>supra</u> § 3739.1 ("If the court permits the non-diverse party to be joined, the statute requires that the court remand the case to the state court from which it was removed.").   Hernandez has since amended his complaint to add Swift Technical.   Accordingly, the Court's jurisdiction is destroyed, and it will remand the case to the First Judicial District Court, County of Santa Fe, State of New Mexico.

**IT IS ORDERED** that: (i) Plaintiffs' Motion to Remand, filed November 30, 2017 (Doc. 17), is denied; and (ii) Plaintiff's Opposed Motion for Leave to File First Amended Complaint to Add Swift Technical Services, L.L.C. as an Additional Party, and to Remand Pursuant to 28 U.S.C. § 1447(e), filed November 30, 2017 (Doc. 18), is granted. The case is remanded to the First Judicial District Court, County of Santa Fe, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Joseph G. Isaac
Scherr and Legate, PLLC
El Paso, Texas

*Attorney* for the Plaintiff

Jennifer G. Anderson
Megan Muirhead
Elizabeth Ann Martinez
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

*Attorneys for the Defendant Chevron U.S.A., Inc.*

Richard A. Bonner
Joseph Austin
Kemp Smith LLP
El Paso, Texas

--and--

Eric W. Kristiansen
Cody T. Vasut
Baker Hostetler, LLP
Houston, Texas

*Attorneys for Defendant Airswift Holdings Limited*

David W. Bunting
Rodey, Dickason, Sloan, Akin & Robb P.A.
Albuquerque, New Mexico

*Attorney for Grand Isle Shipyard, Inc.*